JOHN A. PECK, who sues for the use of
GEORGE M. DELAND,

*v.*

LEONARD BREWER *et al.*

1.  CONTRACTS—*construction of a particular contract.*   Where B, under an agreement with P, received the use and possession of a certain number of sheep, for a specific time, at an agreed price, and stipulates therein, among other things, that at the expiration of the time he would return to P, "in good marketable condition," the same number of the same breed of sheep, which he had received, together with the increase thereof, or the increase of the same animals left with him, and the sheep so delivered to B, under the contract, were, after their receipt by him, found to be diseased: *Held,* the true construction of this agreement, as to kind of sheep to be re-delivered, is, that the sheep returned by

B, shall be as "good and marketable" as can reasonably be expected, the animals being diseased.

2. Same — *when may be affirmed or rescinded, after a discovery of fraud, and damages arising from the fraud recovered by separate action or recouped.* And in such case, when the contract had been partially executed, before B discovered the fraud which had been practiced upon him, by delivering to him diseased sheep, he had the option either to affirm or rescind the contract, reserving his claim for damages arising from such fraud, either by a separate action, or claiming them by way of recoupment, if sued upon the contract.

3. Recoupment — *when allowed.* The established doctrine is, that recoupment will be allowed whenever an action for damages, arising out of the subject matter of the suit, can be sustained, and thus avoid circuity of action. Courts will favor recoupment, rather than drive a party to a separate action.

4. Former decisions. *Stow* v. *Yarwood,* 14 Ill. 424 ; *Brigham* v. *Hawley,* 17 ib. 38 ; *Schuchmann* v. *Knoebel,* 27 ib. 178 ; *Sanger* v. *Fincher,* 28 ib. 347 ; *Bates* v. *Courtwright et al.,* 36 ib. 518 ; *Lunn* v. *Gage,* 37 ib. 19, and *Wright* v. *Lattin et al.,* 38 ib. 293, cited in support of this doctrine.

5. Jury — *affidavit of juror can not be heard to impeach, but may be to sustain verdict.* The rule is well settled, that the affidavit of a juror can not be heard to *impeach* their verdict, but can be to *sustain* it

Appeal from the Circuit Court of Lee county ; the Hon. W. W. Heaton, Judge, presiding.

The opinion states the case.

Messrs. Goodwin & Williams, for the appellant.

Messrs. Barge & Heaton, for the appellees.

Mr. Chief Justice Breese delivered the opinion of the Court:

This was an action of covenant, brought in the Lee Circuit Court, by John A. Peck, for the use of George M. Deland, against Leonard Brewer, Horace Preston and George N. Hanover, on certain articles of agreement under seal.

By the articles, Peck covenanted and agreed to give Brewer the use and possession of six hundred and eighteen head of

sheep for three years. Brewer covenanted that he would deliver to Peck, or his legal representative, on the first day of each and every year, for three years from the date of the agreement, two and one-half pounds of wool for each and every sheep left in his possession by Peck, in good merchantable condition, at Dixon, and if not called for at that time, Brewer was to keep the fleeces, subject to the order of Peck, or his lawful representative, in the same good merchantable condition, until the first day of October next thereafter ; that the wool should be the fleeces of the same sheep given into Brewer's possession by Peck, or the fleeces of the increase of those sheep ; that at the expiration of three years from the date of the agreement, Brewer was to deliver to Peck, or his lawful representative, in good marketable condition, six hundred and eighteen of the same breed of sheep, and the increase of the same, or of the same sheep, or of the increase of the same so left with Brewer by Peck.

There were three counts in the declaration, to which the defendants pleaded sixty-nine pleas, to nearly all of which, except the fifty-eighth, sixtieth and sixty-second pleas, a demurrer was sustained, and leave given to defendants to amend the defective pleas, which was done by filing five additional pleas, so that issues of fact were made up on eight pleas. No question arises upon the pleadings, but we can not avoid expressing our disapprobation of such unparalleled prolixity in pleading, serving no good purpose but to accumulate costs, and when the whole merits of the defense might well be included in three or four brief pleas. There was no contest about the fleeces, but only about the re-delivery of the number of sheep, and their condition when offered to be delivered. The defense can be well understood by an examination of any one of the five pleas last filed, the third of which is as follows: That when the agreement was made, and the sheep delivered, the plaintiff falsely and fraudulently represented to defendant Brewer that they were sound,

healthy and free from disease; that the sheep were then infected with a contagious disease, called the foot rot; that Brewer relied on the representations of the plaintiff, and by means thereof was induced to enter into the agreement, and receive the sheep from the plaintiff, as sound, healthy sheep; that Brewer used reasonable and prudent care of the sheep and their increase, and at the expiration of the three years he tendered to Deland, then the lawful representative of the plaintiff, six hundred and eighteen sheep, being the same sheep, and their increase, in good marketable condition, save the effects of the said disease, and has ever since been ready to deliver them.

In looking over the volume of proof taken in the cause, we are satisfied the issues presented by the defendants in their several pleas, were fully sustained. It is true, there is some conflict of testimony, as there will be in all cases of this nature. The jury have endeavored to reconcile the evidence, and have, as we think, justly found the weight in favor of the defendants, and we deem it amply sufficient to sustain the verdict.

There is evidence tending to show that these sheep, or some of them, had the foot rot in Ohio, whence they came, and that Peck knew it, and, also, knew it at the time he delivered them to Brewer, under the agreement. It is in proof, while the parties were engaged in making the contract, Brewer directed Peck's attention to one or more lame sheep, and on enquiring, of Peck, the cause of the lameness, he gave for answer, that they got hurt on the cars while bringing them out to this State; it is also in proof, that soon after Brewer received the sheep, the disease spread through the flock, which Brewer in vain attempted, by the use of well recognized remedies, to arrest; it is further proved, that during all the time Brewer had the sheep he used all proper care and diligence toward them, supplying them with proper and sufficient food and shelter, and that, at the close of the engagement, he tendered

8—48TH ILL.

58      PECK *v*. BREWER *et al.*      [Sept. T.,

Opinion of the Court.

to Deland, the lawful representative of Peck, the stipulated number of the same sheep, and the increase thereof, left by Peck, and in good marketable condition, except the foot rot, and the consequences and effects of that disease, which Deland refused to receive. By the terms of the contract, Brewer was not required to deliver the best sheep in the flock, but only good sheep, in marketable condition, and of the same flock received of Peck. Where, then, it is proved a contagious disease was in the flock when Brewer received it, which he had striven to conquer, but failed, it would be unreasonable to contend that his contract obliged him to re-deliver sound and healthy sheep. The true spirit and meaning of the contract, the fact of disease being afterwards discovered, is, that the sheep to be re-delivered should be as good and marketable as could reasonably be expected, having that disease among them.

It is urged by appellant, that it was the duty of Brewer to have rescinded the contract, or offered to do so, when he discovered the foot rot was among them. Had he rescinded, he would have been required to have returned the sheep to Peck, which would not have been so easily done, as Peck resided in a distant State. A mere notice to Peck might not have availed, and there was no obligation on Brewer to give that notice.

But what were Brewer's legal rights under such circumstances?

It is claimed by appellants, if there was fraud on Peck's part, in delivering diseased sheep to Brewer, when discovered by Brewer, he should have rescinded so soon as circumstances would permit, on discovery of the fraud, and should not have gone on with the contract after the discovery, and thus increase the injury and damage to Peck, by a continuance of the contract, unless he was willing to stand by the contract as made, and waive all right to claim damages on account of the fraud after it was discovered. He insists that Brewer, by

keeping the sheep, elected to affirm the contract, and agreed from thenceforth to take it with all its burdens as well as advantages, and from the time of the discovered fraud he is estopped from setting up damages by way of recoupment.

Entertaining these views, appellant questions the fifteenth instruction given for defendants, which was as follows:

"The jury are further instructed that the defendants have a right to set up fraud as a defense in this case, without rescinding or offering to rescind the contract," to which the court added, "but if he do so, he must show that he had come as near to a fulfillment of the contract as was possible, after using reasonable care and diligence, by electing to execute the contract; instead of rescinding it as he had a right, he assumed to execute it as fully as possible, with reasonable care and diligence, having, also, the right to recoup or recover in damages for any extra care made necessary by such fraud."

Appellant has cited some cases supposed to support the views he has presented, one of which, *The Saratoga and Schenectady Railroad Co.* v. *Row & Treadway*, 24 Wendell 74, does not seem to bear on this case. That was a contract for the transportation of coke, from New York city to Schenectady, at one dollar and fifty cents per chaldron, which included the expense of transferring the coke from the cellars of the store in New York to the boat, and unloading it at Schenectady. A boat load of the coke arrived at Schenectady, which Row, the captain of the boat, refused to deliver to the railroad company, except upon the payment of charges greatly beyond the contract price. The plaintiffs offered to pay the contract price, and demanded the coke, which was refused and replevin brought. The defense set up was, that the cellar was further from the water than had been represented at the time the contract was made, in consequence of which the whole of the coke was not shipped, the boat being obliged to leave before

all could be got aboard. The defendants insisted that the true location of the coke had been misrepresented, and this had prevented a full compliance with the contract. The judge left the matter to the jury, as a question of fraud, and they found for the defendants.

On a motion for a new trial, the Supreme Court said, if the alleged misrepresentation had related to some other matter than the location of the coke, and the truth had not been discovered until after the performance of the contract had been commenced, a different question would have been presented. But when a party has discovered what he deems a fraud, before he has entered upon the performance, he must then decide whether he will stop short, or go on with the contract. He can not say this is a good contract, for the purpose of authorizing me to do the work, but it does not bind me in relation to the rate of compensation. By going on, Teall & Co. affirmed the contract, and they and their agents are bound by it.

The obvious difference between that case and this, is, that Brewer did not discover the fraud until after he had entered upon the performance of the contract, and he did not know but that he might conquer the disease, or that it would spread through the flock.

The case of *Selway* v. *Fogg*, 5 Mees. & Wels. 83, was a special contract to remove a pile of rubbish, for fifteen pounds, which the party paid. He was then sued for five pounds additional, on the pretence that the pile was deeper than he had represented it to be. The plaintiff was nonsuited, on the ground that he had full knowledge of all that constituted the fraud in the case either before or during the work, and, as soon as he knew it, he should have discontinued the work, and repudiated the contract, or he must be bound by its terms.

The case of *Campbell* v. *Fleming*, 1 Adolphus & Ellis, 40, was a sale of stocks, and it was held, if a party be induced to purchase stocks by fraudulent misrepresentations of the seller

respecting it, and, after discovering the fraud, continues to deal with the article as his own, he cannot recover back the money from the seller.

Many other like cases may, no doubt, be found in the books, but, though analagous in principle to the case under consideration, are not the same, the subject matter, purposes and objects being wholly dissimilar. Here is no attempt to recover back anything on the ground of after discovered fraud, but such. fraud is attempted to be set up as a reason why the contract was no better kept than it was, and the contract itself was not wholly executory when the fraud was discovered. In the case cited from 24 Wend. *supra*, it was.

Another class of cases has been referred to by appellees' counsel, where, in contracts not wholly executory, but in part performed before the discovery of the fraud, the party alleging the fraud has the election either to rescind the contract, or to affirm it and rely upon his action for damages for the fraud, or claim the same by way of recoupment. Such is the case of *Horine* v. *Sibley et al.*, 36 Maine 350, which was an action of covenant broken, arising out of a lease under seal. In this case, it was held that the rights of a party who has been defrauded in making a contract are, on the discovery of the fraud, within a reasonable time, to rescind the contract and restore the parties to their former condition, or to affirm the contract and claim compensation in damages for the injury sustained by reason of the fraud.

A strong case cited by appellees on this point, is that of *Whitney* v. *Allaire*, 1 Comstock 305, which was an action of covenant for rent. The defence was, a fraudulent misrepresentation of the extent of the demised premises. The judge at *nisi prius* charged the jury, that, although the defendant, after the discovery of the plaintiff's interest in the wharf in question, had entered into the possession thereof, and enjoyed the use of it for the term specified, without rescinding, or offering to rescind the contract, yet he had a right to set up

any fraudulent representations or concealment of the plaintiff in respect to the contract, in bar of his claim for the rent, or in reduction of the amount of such claim.

This charge was approved by the court of appeals, and they say, "if the agreement was executory, it would not change the right of the parties. It is conceded if the contract had been partly executed, even in the most trifling particular, the defendant would have the right to rescind and bring his action for the deceit, or affirm the contract and have his remedy by way of recoupment, when sued for the rent. Why should he not have the same remedies when the contract is executory? In neither case, according to the assumption of the plaintiff, could there be a contract until ratified with a knowledge of the fraud. And if an adoption, under such circumstances, of the agreement, is an abandonment by the person defrauded, of his claim to damages for the deceit in the one case, it must be in both. In neither will the repudiation of the contract alone relieve the party defrauded from his responsibility, and restore him to his rights as they existed prior to the agreement. No such distinction is recognized by the authorities. It is true, if a party affirms a contract with a knowledge of the fraud, he affirms it wholly, and this, whether it is executory or partially executed. But in neither case does he affirm it as a contract made in good faith. He consents to be bound by the provisions of the agreement, but does not thereby release or waive his claim for damages arising from a fraud collateral to the agreement."

In this case, the contract was partially executed by Brewer before he discovered the fraud which had been practiced. He was then in a position to elect the course he would take, and in this his own interest was his only guide. If he decided he could make more by affirming the contract than he could by rescinding, he had the right so to do, reserving his claim for damages, arising from the fraud, either by a separate action, or claiming them by way of recoupment if sued upon the

contract. This course he has pursued, and it is the doctrine of this, and other courts, that recoupment will be allowed whenever an action for damages can be sustained, and thus avoid circuity of action, and courts will favor recoupment rather than drive a party to a separate action. Numerous cases are cited by appellee recognizing this doctrine. *Stow* v. *Yarwood*, 14 Ill. 424; *Brigham* v. *Hawley*, 17 ib. 38; *Schuchmann* v. *Knoebel*, 27 ib. 178; *Sanger* v. *Fincher*, 28 ib. 347; *Bates* v. *Courtwright et al.*, 36 ib. 518; *Lunn* v. *Gage*, 37 ib. 19; *Wright* v. *Lattin et al.*, 38 ib. 293.

The doctrine in 2 Pars. on Con. 780, 782, does not militate against that of the cases cited. That learned author holds, and such is the scope of all the authorities, that when a party has the right to rescind a contract on the ground of fraud, and elects so to do, he must do it at once, upon his discovery of the fraud; and he further says, if a party seeks to set aside a contract entirely on the ground of fraud, he must either wait until sued upon the contract and then interpose this defence at law, or, by his bill in equity, seek for an injunction, or other proper remedy. p. 782.

We have examined the instructions given in the cause, and find them unobjectionable. They plainly and fully state the law of the case to the jury.

The remaining point is, the refusal of the court to receive the affidavit of the juror, McKinney, to prove misconduct of the jury, and, at the same time, receiving the affidavits of other jurors to disprove the same. On this point there was no error in the ruling of the court. So far back as the case of *Forrester et al.* v. *Guard et al.*, Breese 74, decided in 1823, the doctrine was held that the affidavits of jurors cannot be heard to impeach their verdict, but they can be to sustain the same. *Smith* v. *Eames*, 3 Scam. 76; *Martin et al.* v. *Ehrenfels*, 24 Ill. 187.

There have been two trials of this cause, each of them resulting in a verdict for the defendant on the facts proved.

We are satisfied the facts sustain the verdict, and finding no error in law, we must affirm the judgment.

*Judgment affirmed.*