ISAAC MILLER, Respondent, *v.* JOHN S. BARBER et al., Appellants.

To maintain an action to recover damages for deceit, in inducing plaintiff to purchase worthless property, it is not necessary to show a return or offer to return the property. The action is *ex delicto*, and not upon contract, and an averment in the complaint of an offer to return may be disregarded.

If the action be brought on the promise implied against a fraudulent vendor, that he will restore the consideration paid by the vendee upon his electing to rescind the contract, plaintiff is bound to aver and prove a return or offer to return the property upon discovery of the fraud.

Where the copy of pleadings, furnished the court upon trial, contains a reply to a counter-claim set up in the answer, it is within the discretion of the court whether to receive proof that no reply was, in fact, served or to leave defendant to his remedy by motion after trial, and its determination is not reviewable here.

A corporation was organized under the general manufacturing law for the purpose, as stated in its charter, of dealing in patent-rights and the manufacture and sale of patented articles. Defendant B. was president, and defendant S. secretary, and both took an active part in the organization. They, with the other promoters of the company, had purchased for $8,500 an interest in a "patent hay-loader," giving their notes for most of the purchase-money. The scheme to organize the company was set on foot to realize means to relieve themselves from liability thereon and to secure advances. The interest in said patent was conveyed to the company, and was the only property held by it to represent its nominal capital of $35,000. To promote the sale of stock, and give

credit to the enterprise, various prominent men were solicited and induced to subscribe for stock, giving their notes therefor upon a secret agreement, which was carried out, that the notes should be given up without payment. Plaintiff was induced to subscribe for $500 of the stock, giving his note therefor, payable to defendants or bearer, upon representations of defendant B, that the invention was of great value, accompanied by a statement of the names of the stockholders; B. including in the list the names of those who had subscribed under the secret agreement. The negotiations were had in the office of defendant S., used as the office of the company; he was in another room at the time. Stock was also sold to others upon similar representations, and enough was realized from sales to pay the advances and liabilities of the original purchasers of the patent. Plaintiff's note was sold before maturity, and plaintiff paid the same. In an action to recover damages for fraud, the evidence tended to show that the patent was of no value. *Held,* that the evidence was sufficient to sustain the action, as the representation of the value of the invention was accompanied with a false representation of an extrinsic fact, calculated to, and which did, put plaintiff off his guard, and induced him to give credit to the statement of value.

Also, *held,* that the representations so made by B. were properly received in evidence as against S., the evidence showing that he knew, from its inception, of the scheme for securing fictitious subscriptions, and that he accepted the benefits resulting from the fraud.

This evidence was received before the connection of S. with the company had been shown; it was not offered or received to show him a party to the fraud. *Held,* no error, as the order of proof was within the discretion of the court.

Also, *held,* that evidence of representations made by defendants to others of a similar character with those made to plaintiff, and made about the same time under similar circumstances, was competent.

The court charged that the rule of damages was the difference between the value of the stock as represented and as it was, but refused to charge that no recovery could be had because no proof of difference in value had been given. *Held,* no error; that the value of the stock depended upon the value of the invention, as the company had no other property; and that from the representation that the invention was a valuable one the jury had a right to assume, as against defendants, that if the representation had been true the stock would have been worth what plaintiff paid.

The court having charged in substance that the jury must be satisfied from the evidence that defendants were guilty of the fraud charged before a verdict could be found against them, was requested by defendants' counsel to charge that they must be satisfied by clear and substantial proof. *Held,* no error.

(Argued June 2, 1876; decided September 19, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department in favor of plaintiff, entered upon an order denying a motion for a new trial and directing judgment on a verdict. (Memorandum of decision below, 4 Hun, 802.)

This action was brought to recover damages sustained in the purchase of certain stock by plaintiff of defendants, which purchase was alleged to have been induced by fraudulent representations on the part of defendants.

The complaint alleged, in substance, that defendants falsely and fraudulently represented that they had organized a company under the name of the Union Patent Right Company, of which defendant Barber was president and the defendant Schermerhorn was secretary, which owned the right to sell in certain specified counties a patent right for an invention known as "the hay-loading pitchfork," which was purchased cheap and was very valuable; that various individuals named and well known to plaintiff as men of character and pecuniary responsibility had taken shares, giving their notes therefor; that, relying on such statements and representations, plaintiff subscribed for one share of the stock, giving his note for its nominal par value, to wit, $500, payable to the defendants or bearer, which note was transferred to a *bona fide* holder before maturity, and plaintiff was compelled to, and did, pay the same; that defendants, for the purpose of cheating and defrauding plaintiff and others, had devised and carried out the scheme of organizing said company, and had procured various individuals, whose names were mentioned as aforesaid, to become apparent stockholders and to give their promissory notes for stock under the secret agreement that said notes were not to be paid, but were to be given up after being used to induce others to purchase stock, which notes were subsequently given up, and that the stock of said company and said patent and invention were utterly worthless. The complaint also alleged that upon the discovery of the fraud plaintiff tendered back the certificate of stock received by him and demanded the amount of money paid by him upon the note.

The defendants answered separately. The defendant Barber's answer set up a counter-claim for more than the amount of plaintiff's claim alleged to have arisen out of another contract subsequent to the sale in question.

On the opening of the case on the trial, defendant Barber asked the court to direct a verdict for him on the ground that no reply had been served to the counter-claim. The copy pleadings furnished to the court contained a reply. Barber offered to prove that in fact no reply was served. The court refused the offer, holding that if no reply was in fact served, defendant must seek his remedy by motion after judgment.

Plaintiff proved the facts substantially as alleged in the complaint, except the alleged offer to return the stock, which was not proved. Proof was offered and received, under objection and exception, as to the alleged representations before any proof of the organization of the company. It appeared that the representations were made by Barber, Schermerhorn not being present. The conversation was had in a back room in Schermerhorn's office, he being in the front room. This office was used as the office of the company. Evidence as to the conversation with Barber was objected to as against Schermerhorn; the court overruled the objection. After the conversation with Barber, plaintiff went into the other room where Schermerhorn was, who asked him if he had any of the stock, plaintiff answered that he had not, that he hadn't the money to pay. Schermerhorn replied, in substance that he would have to pay no money, but simply to give a note, and before it became due the dividends would pay it, and told of some persons who had subscribed — naming some who had subscribed under the secret arrangement. Plaintiff went back into the other room, and, after some further conversation with Barber, subscribed, gave his note, and took a certificate signed by Barber, as president, and Schermerhorn, as secretary of the company. It appeared that the interest in the patent-right was purchased by defendants and others for $8,700, they paying a small portion in money, and giving their

notes for the residue. That the company was organized under the general manufacturing law, the patent-right transferred to it, and that it had no other property of any kind; its nominal capital was $35,000, divided into shares of $500 each. The object of the scheme was to enable its projectors to realize enough to pay what they had advanced, and the amount of their notes, out of *bona fide* subscribers.

The only testimony on the subject of damages was evidence tending to show that the invention was worthless.

Plaintiff was permitted to prove, under objection and exception, that representations, similar to those made to him, were, at or about the same time, made by defendants to other persons for the purpose of inducing them to subscribe for and take stock.

The defendants' counsel requested the court to charge, among other things, that unless the plaintiff is in a position to ask a rescission of the contract, then he cannot recover under the complaint in this case for the fraud, as no proof has been given as to the difference between the value of the stock, as represented, and as it in fact was. The court refused so to charge, and defendants' counsel excepted.

Said counsel asked the court to charge, that the rule of law in regard to damages is the difference between the value of stock as it was represented to be, and as it was in fact. The court so charged.

The defendants' counsel then requested the court to charge that no evidence has been given as to the difference in the value of the stock. The court declined so to charge, stating that some evidence has been given bearing upon that question, to which defendants duly excepted.

The court having charged in substance, that the jury must be satisfied from the evidence, that defendants were guilty of the fraud charged before they could find a verdict against them; was requested to charge: "That the jury must be satisfied the plaintiff has made out his cause of action by clear and substantial evidence," to which the court replied: "I do not charge that proposition in the language expressed;

I only charge you that you must be satisfied by the evidence in the case that the plaintiff has proved his cause of action. That the evidence establishes his cause of action, in order to entitle him to recover, I decline to say; it must be in clear and substantial evidence." To the refusal to charge said counsel duly excepted.

*M. M. Waters* for the appellants. The court erred in holding that this action was for fraud. (52 Barb., 570; 56 N. Y., 87; 59 id., 156; 51 id., 108; 50 id., 1; 51 id., 27.) Plaintiff was bound to establish, by at least *prima facie* evidence, the common intent or unlawful design, before proving the acts and declarations of defendant Barber against defendant Schermerhorn. (33 Barb., 165; 39 id., 403; 40 N. Y., 221; 4 Lans., 214, 228.) It was competent to show representations similar to those made by defendants to plaintiff at about the same time. (1 Hun, 344; 11 How., 242; 51 Barb., 116; 2 Rob., 500; 4 Abb. [N. S.], 431; 9 id., 357; 5 Bosw., 344; 4 Lans., 214; 47 Barb., 404; 1 Greenl. Ev., §§ 51–53.) The representations as to value averred in the complaint were not sufficient to constitute a cause of action. (51 N. Y., 27; 56 id., 83.) Without proof as to the difference between the value of the stock as represented, and as it in fact was, plaintiff was not entitled to recover under the complaint for fraud. (55 Barb., 615; 52 id., 570; 6 Rob., 502; 51 N. Y., 108; 50 id., 4, 5; 52 id., 570; 53 id., 307, 316.) The court erred in holding that a reply had been served. (15 N. Y., 425; 17 id., 227; 28 id., 438; 7 id., 476; 11 How., 11, 24; 22 How., 104; 52 Barb., 570; 6 Rob., 502.)

*Geo. N. Kennedy* for the respondent. The allegations in the answer did not contain facts sufficient to constitute a counter-claim. (37 N. Y., 409; 4 Tr. Apps., 332; 5 Dyer, 332; 5 Bosw., 648.) The alleged counter-claim did not grow out of the transaction or form a part of it, but was predicated upon a subsequent arrangement, and was not the subject of a counter-claim. (*Chambers* v. *Lewis*, 11 Abb., 210; *Patterson* v. *Richards*, 22 Barb., 143, 327; 37 N. Y., 402; Code, § 150.)

Andrews, J. The objection was taken on the trial, that the plaintiff could not maintain the action, for the reason that he did not return or offer to return to the defendants the certificates of stock in the "Union Patent Right Compay," issued to him on his subscription to the capital stock, within a reasonable time after the discovery of the alleged fraud.

The validity of this objection depends on the character of the action. The complaint contains all the allegations essential in an action for deceit in inducing the plaintiff by fraudulent representations to purchase a worthless stock. The *scienter* was sufficiently averred. (25 N. Y., 244.) The summons was for relief and judgment was demanded for the damages sustained by the plaintiff. The action was *ex delicto* and not upon contract. The form of the summons and the demand for relief in connection with the allegations of the fraud characterize it. If the action had been brought upon the promise which the law implies against a fraudulent vendor of real or personal property to restore the consideration paid by the vendee upon his electing to rescind the contract, then the plaintiff would have been bound to aver and prove that upon discovery of the fraud he had returned or offered to return what he had received upon it. But an action for damages for the deceit is brought consistently with an affirmance of the contract of sale, and the judge properly held on the trial, that the averment in the complaint of an offer to return the certificate might be disregarded as surplusage. (*Hubbell* v. *Meigs*, 50 N. Y., 487.)

The answer of the defendant Barber contains a counter-claim, arising out of an alleged contract between the plaintiff and Barber, made subsequent to the sale of the stock. The copy of the pleadings furnished to the court by the plaintiff contained a reply denying the alleged counter-claim. The defendant Barber thereupon offered to prove that in fact no reply had been served, as was claimed by the plaintiff. The judge refused to hear the proof and ruled that the case should proceed upon the pleadings furnished, leaving the defendant to his remedy by motion after the trial. This was the former practice in respect to the *nisi prius* record (*Wood*

v. *Buckley*, 13 J. R., 486), and it was, we think, within the discretion of the judge to refuse to enter into this collateral issue at that stage of the proceedings. Moreover, the facts upon which the alleged counter-claim arose were shown upon the trial, and they were insufficient to establish a counter-claim in the action.

In order to understand the force of objections taken on the trial by the defendants to the admission of evidence, it is proper to refer to the general features of the case as disclosed by the testimony. The "Union Patent Right Company" was a corporation organized under the general law for the formation of manufacturing and other corporations, passed February 17, 1848. The certificate was dated December 23, 1865, and was filed in the office of the secretary of State, January 13, 1866. The object of the corporation stated in the certificate, was the dealing in patent rights and the manufacture and sale of patented articles. The capital stock was fixed at $35,000, divided into shares of $500, each. The defendants and five other persons were named as trustees for the first year. The defendants Barber and Schermerhorn were elected respectively president and secretary of the company, and the salary of the former was fixed at $500 a month. Both of the defendants took an active part in the organization of the company, and the office of the defendant Schermerhorn was also for a considerable time the office of the company. The promoters of the company shortly before it was organized, had purchased for the sum of $8,500, an interest in a patent "hay-loader," and had given their notes for the principal part of the purchase-money. These notes were outstanding, and the scheme was set on foot to organize a corporation on the basis of this property, and by sales of stock to realize the means for the payment of their liabilities and to secure themselves for their advances. The interest in the patent was conveyed by the owners to the company soon after its organization, and was the only property which the company had to represent its nominal capital of $35,000. Both defendants were interested

in the original purchase of the patent and both were to be benefited by sales of stock. In order to promote the sale of stock various individuals of prominence in the community were solicited to subscribe for stock and give their notes for the amount of their subscriptions so as to give credit to the enterprise, upon the secret agreement, however, that the notes should be given up after a short time without payment. In several instances subscriptions were made and notes were given upon this understanding, which were subsequently surrendered in pursuance of it to the makers. These subscribers neither received the stock or paid their subscriptions. The plaintiff subscribed for one share of the stock and gave his note for the full par or nominal value of the share. But he was not one of the persons with whom the agreement referred to was made. His note was payable to the defendants or to one of them, and was transferred before maturity in part payment of notes given by the defendants and others to the patentee on the original purchase, and he was subsequently compelled to pay it. The negotiation with the plaintiff which resulted in his subscription to the stock was conducted by the defendant Barber in the back office of the defendant Schermerhorn, who at the time was in the front office and did not hear the conversation. The invention was represented by Barber to be of great value. He mentioned the names of the persons who had taken stock in the company, and these were persons who had allowed their names to be used and had given their notes to aid the enterprise, but who never took, and were never expected to take, stock in the company. Stock was sold to other parties under similar circumstances, and upon similar representations. Enough was realized from the sales to pay the advances and liabilities of the original purchasers of the patent. Some effort was made to introduce and sell the right to use the invention, but after a short time they were discontinued. No dividends were ever earned or paid by the company and there was evidence tending to show that the invention was of no value.

It cannot be doubtful that an action lies for the fraud

practiced upon the plaintiff. The representation of the value of the invention was connected with a false representation of an extrinsic fact calculated to impose upon the plaintiff, to put him off his guard and to induce him to give credit to the representation of value. It had the effect it was designed to have. He relied in taking the stock in part upon the supposed judgment of other persons who, as he was falsely informed, had taken stock in the company.

It is earnestly insisted in behalf of the defendant Schermerhorn that the evidence is insufficient to connect him with the fraud. It is true that he made no direct representations to the plaintiff. But the evidence warrants the conclusion that he knew from its inception of the scheme for securing fictitious subscriptions in aid of the sale of the stock and that he accepted the benefits resulting from the fraud.

The judge permitted the declarations made by the defendant Barber during his negotiation with the plaintiff for the sale of the stock to be given in evidence as against the defendant Schermerhorn before his connection with the company had been shown. The evidence was competent as against Barber. It became competent as against Schermerhorn, when by the facts subsequently proven his connection with the fraud was *prima facie* shown. The declarations of Barber were not competent to show that Schermerhorn was a party to the fraud, nor were they admitted for that purpose. But when evidence sufficient to submit to the jury had been given tending to show that the defendants were jointly engaged in a common scheme to defraud the plaintiff and others the acts and declarations of Barber in furtherance of the common design were admissible against both. The order of proof is in general a matter of discretion, and we are of opinion that no legal error was committed in allowing the declarations of Barber to be given in evidence, as against his co-defendant before proof of his connection with the conspiracy had been made. If the proof subsequently given had failed to connect Schermerhorn with the fraud, it would have been the duty of the court to have instructed the jury to disregard them

in considering his liability. (1 Greenl. Ev., § 111; *The People* v. *Parish*, 4 Den., 153; *Sweet* v. *Rodgers*, 6 T. R., 118; *Page* v. *Parker*, 40 N. H., 62.)

The plaintiff was permitted to prove representations made by the defendants to other persons, at or near the same time, and of a similar character as those made to the plaintiff, and under similar circumstances. This was competent upon the question of fraudulent intent. (*Cary* v. *Houghtaling*, 1 Hill, 311; *Hall* v. *Naylor*, 18 N. Y., 588.)

The court, in accordance with the request of the defendant, instructed the jury that the rule of damages was the difference between the value of the stock as it was represented to be and as it was in fact, and refused to charge that no recovery could be had because no proof of difference in value had been given. The value of the stock depended upon the value of the invention. The company had no other property. The jury were authorized to find that the invention was without value, and from this fact that the stock was valueless, also. The defendant represented that the invention was a valuable one; and as against the defendant, the jury could assume that if the representations had been true the stock would have been worth what the plaintiff paid for it. (*Page* v. *Parker*, 40 N. H., 47.) The court properly refused to charge as requested.

The court having charged in substance that the jury must be satisfied from the evidence that the defendants were guilty of the fraud charged, before they could find a verdict against them, was then asked to charge that the jury must be satisfied by clear and substantial proof. The charge as made stated the correct rule of law upon the subject, and the court was not bound to charge in the words used by the defendants.

There are many exceptions to evidence, and to the charge, not here noticed; we have examined them, and are of opinion that none of them are well taken.

The judgment of the General Term should be affirmed.

All concur; Miller, J., absent.

Judgment affirmed.