## HERFORT v. CRAMER.

1. An affidavit in attachment, stating as ground therefor "that the demand is due on express contract for the direct payment of money, to wit, upon three several promissory notes now overdue," and giving the amount, *held* a good ground of attachment under the fourteenth subdivision of the attachment act.

2. The connected structure of a pleading cannot be destroyed or disjoined at the pleasure of the pleader, and its disconnected averments separately demurred to.

3. A pleading, to be subject to demurrer, must present defects so substantial in their nature, and so fatal in their character, as to authorize the court to say — taking all the facts to be admitted — that they furnish no cause of action whatever.

4. Upon discovery of fraud in a contract of sale, the vendee has his election to rescind the sale and return the property, or to retain the property and prosecute his claim for damages, either by original action or as a counterclaim to an action against him for the purchase money brought by the party committing the fraud.

5. It is well settled that the good will of a business may have a property value and form the subject-matter of a contract and sale; and the contract being an entirety, for the stock and good will, the

vendor may not relieve himself of liability by proving that the stock was worth the amount of the purchase money.

6. If the property sold is more valuable than the consideration expressed in the contract, the profits of the bargain legitimately belong to the purchaser.

7. The rule for the estimation of damages resulting from fraudulent representations in the sale of both real and personal property is the same. It is to ascertain the difference between the value of the property as it actually existed on the day of sale, and its value as it was represented to be.

8. In alleging damages it is only necessary to particularly specify the items, when the damages claimed are not the direct and necessary consequence of the wrong complained of.

9. In this case *held* that the fact that the demands sued on were assigned to plaintiff does not exonerate him. It is charged that the false representations were made by him, and he must be held personally responsible for the consequences.

*Error to County Court of Lake County.*

THE facts are stated in the opinion.

Mr. A. S. WESTON, for plaintiff in error, *ex parte.*

BECK, C. J. This case is submitted *ex parte* by plaintiff in error upon a rather meager brief, considering the fact that the points raised involve important questions of practice.

The first error assigned is, that the court erred in issuing an attachment on an insufficient affidavit.

The affidavit was made under the *fourteenth* subdivision of the attachment law (Civil Code, 1883, p. 30), and merely states as ground for attachment, that the demand is due on express contract "for the direct payment of money, to wit, upon three several promissory notes now overdue, amounting to the sum of $1,797.50, besides interest."

The *quære* suggested is, whether it is sufficient to authorize the issuing of a writ of attachment, that the affidavit state merely the ground mentioned in this *fourteenth* subdivision of the act, or whether some other ground must not be stated?

This question was passed upon by this court at the December term last, in the case of *Simmons v. California Powder Co.* (*ante*, p. 285), wherein it was held that notwithstanding the awkwardness of the phraseology, and the misplacing of said *fourteenth* subdivision in the attachment act, and the error in numbering, it was intended to define a separate and additional cause of attachment.

The *first* error, therefore, is not well assigned.

The *second* and *third* errors assigned are more serious. They question the rulings of the court below in sustaining the plaintiff's demurrer to portions of the defendant's answer.

A brief summary of the pleadings is necessary to an understanding of the points involved.

The plaintiff below, Joseph C. Cramer, sued the defendant, Lewis Herfort, upon three promissory notes, one for the sum of $1,000, payable to David Ringle, and signed by both defendant and plaintiff.

The other two notes were for the sum of $500 each, were payable to the order of J. C. Cramer & Co., and were signed by the defendant only.

The complaint alleges that the plaintiff signed the first note as security for the defendant, to enable the latter to borrow of the payee the sum of $1,000; that the defendant paid the accrued interest thereon, less the sum of $15, and no more; and that the plaintiff was compelled to pay the principal sum and balance of interest, and now holds the note, etc.; that the two $500 notes were transferred to him by the firm of J. C. Cramer & Co., and that plaintiff is the owner thereof.

The portion of the answer covered by the *first* and *second* grounds of demurrer alleges, in substance, that the obligations mentioned were executed by the defendant in consideration of an agreement entered into between him and the firm of J. C. Cramer & Co., whereby the said firm sold and transferred to the defendant their en-

tire water-cart outfit, together with the good will of the water-supplying business theretofore carried on by said J. C. Cramer & Co., in the city of Leadville. The property used in connection with the business consisted of seven water carts, fourteen horses and necessary equipments. By the terms of the agreement the defendant became obligated to pay for said business and property the sum of $4,500.

He alleges that he was induced to enter into this agreement by means of representations made to him by the plaintiff, J. C. Cramer, that the business was paying his firm $600 per month, clear of running expenses; that it would pay the defendant at the same rate, clear of running expenses, and that defendant could easily pay for the property out of the net proceeds of the business, before the maturity of the notes for the purchase money.

Defendant alleges that these representations were false and fraudulent, and were wilfully made by the plaintiff for the purpose of defrauding and injuring him; that the property and business did not pay anything above running expenses, either to the firm of J. C. Cramer & Co. or to the defendant, and that it was incapable of being made to pay any more.

He avers that the $1,000 note was executed for the purpose of obtaining a loan of the sum mentioned, to be applied as a cash payment upon the contract, and that it was obtained and paid over to the said firm, and that the plaintiff and his copartners had the full benefit thereof. He further states it was part of the agreement with said firm that the plaintiff should execute said note as surety.

The defendant avers that he was induced to execute said note, for the purpose of procuring the loan aforesaid, by the false and fraudulent representations of the plaintiff, and that he was induced to execute the two $500 notes by the same fraudulent conduct, and that in consequence of said fraudulent representations he has been injured in the sum of $2,000.

A demurrer was sustained to this portion of the answer, and the defendant elected to stand by the answer.

The correctness of this ruling is now questioned by the *second* and *third* assignments of error.

There was a trial upon an issue raised upon another portion of the answer, which set up a different ground of defense, and a finding and judgment for the plaintiff.

We are not advised wherein the defense or counterclaim stated was supposed by the court to be defective, save by the demurrer itself, which says, referring to a part of the defense, designated by certain words and lines, "that the same does not state facts sufficient to constitute a cause of action, nor does the same constitute any defense to plaintiff's cause of action, or to any of the causes of action set forth in plaintiff's complaint."

The residue of this defense is separately demurred to upon the same grounds.

We observe, in the first place, that whatever defects may exist in the portion of the answer under consideration, the demurrer is still more defective. The attempt thus made to separate the averments descriptive of the fraud practiced upon the defendant into two distinct offenses, seems to be wholly without pretext. This portion of the answer does not purport to state two grounds of defense, but the single ground that the defendant was induced to enter into the contract of purchase through fraud, and that he has been injured thereby in the sum stated.

Treating it, however, as two distinct defenses, the language of the demurrer is, " comes now the said plaintiff and demurs to all that part of the defendant's said answer made and filed herein, from and including the fourteenth line," etc., and assigning the ground of demurrer above stated. It then proceeds: " And the said plaintiff, further demurring to said answer, demurs to all that part of the said answer from and including the words ' that

said note,' in line number ten," etc., and concludes with the same objection above stated.

The connected structure of a pleading cannot thus be destroyed or disjoined at the pleasure of a pleader, and its disconnected averments separately demurred to. Such a practice is not to be tolerated.

We will, however, proceed to inquire whether this portion of the answer contained sufficient facts to con-stitute a cause of action or ground of defense.

In Bliss upon Code Pleading, sec. 425, it is said of a demurrer for the objection here made, that the pleading to be subject to demurrer "must present defects so sub-stantial in their nature, and so fatal in their character, as to authorize the court to say — taking all the facts to be admitted — that they furnish no cause of action what-ever."

Now, regarding the averments of the answer to be true, there is presented as a counterclaim to the cause of action, the following facts:

The defendant was induced, by representations made by the plaintiff, to purchase what he was led to believe was a highly remunerative business, obligating himself to pay therefor, together with the stock necessary to operate the same, the sum of $4,500. The representa-tions were not true, and the plaintiff knew them to be false when he made them. He represented that the business was paying his firm, and would pay the defend-ant, $600 per month over and above running expenses, whereas the fact was that it was not paying the proprie-tors anything at the time of the sale, and could not be made to pay anything over running expenses. The rep-resentations were fraudulently made for the purpose of inducing the defendant to purchase a worthless business and the property connected therewith. Being a private business enterprise, the facts whether or not it was a profitable enterprise, and to what extent, were peculiarly within the knowledge of the plaintiff and the partners

whom he represented. The defendant is not presumed to have had any knowledge on the subject except as obtained from the owners. He relied upon the statements made to him on their behalf, as he had a right to do, and dealt with them as with honest men. The result was that he was grossly deceived and defrauded. Instead of getting what he contracted for — an established and remunerative business,— he found himself incumbered with an enterprise that yielded no profit whatever, and with property, a considerable portion of which was useless for any other purpose than the water-supplying business, for which specific purpose he had purchased it.

As a consequence of the deception practiced upon him, the defendant says he is damaged in the sum of $2,000.

The foregoing are all the material averments, and we discover nothing omitted which is necessary to be stated in order to entitle the defendant to recover, by way of counterclaim, such damages as are the natural and necessary consequence of the fraud complained of.

It cannot be said that upon discovery of the fraud he should have taken steps to rescind the contract, for he had his election to rescind the sale and return the property, or to retain the property and prosecute his claim for damages, either by an original action or as a counterclaim to an action against him for the purchase money, brought by the party committing the fraud. *Whitney v. Allaire,* 4 Denio, 556; *Lilly v. Randall,* 3 Col. 298.

Nor is it a valid objection that this portion of the answer contains no averment of the separate value of the stock, aside from the good will of the business. The contract was an entirety, and the sum of $4,500, contracted to be paid, was the consideration for the whole property, which included the good will of the water-supplying business.

The defendant was entitled to the benefit of the entire contract as it was made, contemplating the *res,* or thing

purchased, as it was represented to be, not as it actually proved to be.

It is well settled that the good will of a business may have a property value, and form the subject-matter of contract and sale.   *Cruess v. Fessler,* 39 Cal. 336; *Morse v. Hutchins,* 102 Mass. 439.

The plaintiff could not relieve himself of liability by proving that the stock alone was worth the sum of $4,500. The question is not what was the value of the *stock,* but how much less was the value of the good will of the business and the stock, at the time of the purchase, than it was represented to be by the defendant.   *Miller v. Barber et al.* 66 N. Y. 558.

If the property is more valuable than the consideration named in the contract, the profits of the bargain legitimately belong to the purchaser.   So, also, if the seller falsely and fraudulently represents the property to be more valuable than it really is, and the purchaser is thereby deceived and induced to enter into a contract of purchase, he is entitled to the benefits which he would have derived therefrom if the representations had been true.

In *Morse v. Hutchins, supra,* Mr. Justice Gray says: "To allow the plaintiff  *  *  *  only the difference between the real value of the property and the price which he was induced to pay for it, would be to make any advantage lawfully secured to the innocent purchaser in the original bargain inure to the benefit of the wrongdoer."

It is clear that no material facts respecting the value of the property were omitted.   The averment that the defendant was injured to the extent of $2,000 is equivalent to an averment that the property purchased was in fact worth that much less than it was represented to be worth.   If the averment should be duly proven on trial, the defendant would be entitled to an allowance of the sum stated.

The rule for the estimation of damages resulting from fraudulent representations in the sale of both real and personal property is the same. It is to ascertain the difference between the value of the property as it actually existed on the day of sale, and its value as it was represented to be. It is thus stated in a case involving the sale of a farm: "The true rule, as now settled, is the difference between the value of the farm as represented, and the actual value as it was when conveyed. In other words, how much more would the farm have been worth if the several representations made by the defendant, which were proved to be at once false, fraudulent and material, had been true?" *Wright v. Roach,* 57 Me. 600; citing *Stiles v. White,* 11 Met. 356; Sedg. on Damages (5th ed.), 333, 655, 658. See, also, *Miller et al. v. Barber et al.* 66 N. Y. 568; *Page v. Wells,* 37 Mich. 415, and *White v. Smith,* 54 Iowa, 233.

The case of *Morse v. Hutchins,* 102 Mass. 439, was very similar in its principal features to the case before us. It was an action for damages arising from false and fraudulent representations touching the business and profits of a firm of which the defendant was a member, by means of which the plaintiff was induced to buy the interest of the defendant in the stock and good will of the firm.

Upon the subject of damages, the jury was instructed that "the measure of damages would be the difference between the actual value of the stock and good will purchased, at the time of the purchase, and the value of the same had the representations been true." It was held that the correct rule was announced in the instruction.

Perhaps in the present case the court thought the facts stated did not sufficiently indicate the nature of the damages claimed, to prevent surprise at the trial, and that the defendant could not be permitted, as against an objection, to introduce testimony on the subject.

The answer to this objection is, that it is only necessary

to particularly specify the items when the damages claimed are not the direct and necessary consequence of the wrong complained of.

This rule is not applicable to a claim for general damages, such as here presented. On the contrary, when the pleading contains a claim for general damages, supported by a statement of facts showing that the damages claimed are the natural, necessary and direct consequence of the wrong complained of, it is sufficient, and not subject to demurrer. Should proof of special damages be offered on trial, the objection can be raised there that the complaint or answer, as the case may be, contains no such claim.

, If, for example, the defendant in this case should offer to prove under this answer, that, by reason of the purchase of the business and stock mentioned, he had lost six months of his time, which was of the value of $100 per month, an objection that no such facts were stated in the answer would be good. But proof that the things purchased were not as represented, and were less valuable, by a certain sum of money, than they were represented to be, would naturally and necessarily follow from the statements of the answer.

Mr. Chitty says: "Damages are either general or special. *General* damages are such as the law *implies*, or presumes to have accrued from the wrong complained of. *Special* damages are such as *really* took place, and are not implied by law, and are either superadded to general damages arising from an act injurious in itself, as where some particular loss arises from the uttering of slanderous words actionable in themselves, or are such as arise from an act indifferent and not actionable in itself, but injurious only in its consequences; as where words become actionable only by reason of special damage ensuing." 1 Chitty, Pleading, *411.

In *Jutte v. Hughes*, 67 N. Y. 268, which was an action for injuries alleged to have been occasioned to plaintiff's

premises by the flow of water and filth from defendant's premises adjoining, in answer to the objection that special damages should have been alleged, the court say: "This doctrine might well apply in actions of slander, and of a kindred class, under the common law practice, which requires that special damages should be specially alleged. Where, however, the damages necessarily result and naturally flow from the injury complained of, they may be recovered without any special averment."

In *Rice v. Coolidge*, 121 Mass. 393, 398, which was an action for a tort, the court say: "Another ground of demurrer is that the declaration does not contain any allegation of damage sufficient to constitute a legal cause of action. The acts charged upon the defendants are such that the natural and necessary consequences of them are to injure the plaintiff. Under the general allegation of damage she may recover damages for this injury, and no allegation of special damage is necessary to enable her to maintain her cause of action." See, also, *Shaw v. Hoffman*, 21 Mich. 151, 158; *Miller v. Barber et al.* 66 N. Y. 564; *Roberts v. Graham*, 6 Wall. 578.

We are of opinion that the averments of the answer show a direct damage resulting to the defendant from the wrongful acts of the plaintiff.

It does not affect the issue in this case that the plaintiff sues for a portion of the purchase money. In legal contemplation the entire consideration was paid when the defendant executed his obligations to that effect. The defendant is entitled to a single satisfaction of his damages; and, as above stated, he may either bring an original action therefor, or set up his demand as a set-off or counterclaim to any action brought against him by the party who committed the fraud.

The fact that the demands sued on were assigned to the plaintiff does not exonerate him. It is charged that the false representations were made by him, and he must

be held personally responsible for the consequences. *Eaton, etc. Co. v. Avery*, 83 N. Y. 31.

. The remaining errors which have been assigned relate principally to matters concerning which the court was vested with large discretion, and we cannot say that it was not properly exercised.

The judgment is reversed and the cause remanded.

*Reversed.*