Macomber, J.
The action is to recover damages for fraud and deceit alleged to have been practiced upon the plaintiff by the defendants William M. Reynolds aud Robert M. Reynolds, in the sale to her of a quantity of the stock of the Cisco Consolidated Gold Mining Company. The jury rendered a verdict against the defendant William M. Reynolds, the appellant, but not against the defendant Robert M. Reynolds.
The appellant was the president of the Cisco Mining Cov a corporation which was organized under the Laws of the state of New York to work gold mines in the state of California. Its stock was divided into 100,000 shares of $100 each, amounting in all to $10,000,000 on paper. The plaint-. iff purchased of this stock, mainly if not wholly through Robert M. Reynolds, in February, 1880, 8,900 shares at $22.50 per share, giving therefor two notes, one for $73,000 payable in fifteen days, and another for $89,000 payable in thirty days, and $18,500 in cash or good securities. In April of the same year she purchased the further amount of 250 shares at twenty-five dollars per share, for which she gave her promissory note in the sum of $3,250, paying for the residue $3,000 in cash. Again, in January, 1882, she bought 200 shares at five dollars a share, paying therefor in Missouri Pacific stock $425, $75.00 in cash and the balance in her note of $500. In April, 1882, she bought 200 shares at $7.50 per share, paying therefor $500 in cash and a note for $1,000. .
The February transaction was afterwards so modified and arranged as that the plaintiff accepted 600 shares of the stock for the cash payment then made of $18,500, and received back her promissory notes already mentioned. In August, 1880, the defendant, Robert M. Reynolds, received *634 back from her 200 shares at the rate of $12.50 per share, amounting to $2,500. Rejecting the notes, therefore, this action is brought to recover the cash payments made as aforesaid in the months of February and April, 1880, and in January and in April, 1882, amounting in all to $20,500. The analysis of the grounds of the action and of the proofs shows that the plaintiff relied, to maintain her action, upon the following false and fraudulent representations : First, that the stock so purchased by the plaintiff was worth a great deal more than the price paid for it. Second, that the specimens of ore which were exhibited to the plaintiff as coming from the mines of this corporation were borrowed for the occasion and in fact were never produced by those mines. Third, that Mr. Coe, who was represented as being desirous of becoming president of the corporation, had never expressed or had any such intention; nor had he ever offered to any person twenty-five dollars a share for 1,000 shares of the stock, and that he had no purpose or intention of investing in that stock. Fourth, that Drake B. McKay had offered to exchange Chrysolite stock for the stock of the Cisco Company. Fifth, that the mines for sixteen years had belonged to members of the family of the late Alfred Chartick, whereas in truth and fact they were never in the possession of any member of that family. Sixth, that a mill had been purchased and was about to be forwarded, whereas it had not been purchased at the time of the making of the representations. Seventh, that certain reports of assays of the gold alleged to have been taken from the mines were exhibited to the plaintiff’s son for the purpose of showing the richness of the mines, and that such assays were of gold that was not taken from the mines, all of which the defendants well knew. Eighth, that William M. Reynolds had examined the mines in the year 1879, and in consequence of such investigation had invested the sum of $35,000 therein.
It is claimed by the learned counsel for the defendant, in a very elaborate argument, first, that the verdict is against the weight of the evidence. Upon an examination of the case, the fact is disclosed that the plaintiff was induced to buy the stock through the representations made to her as coming from William M. Reynolds by the agency of Robert M. Reynolds and of the plaintiff’s own son Ogden Vail. There is evidence from which the jury would have been warranted in holding Robert M. responsible in this action for certain of the representations which induced the plaintiff to part with her money. The jury, however, have taken the view that was perfectly permissible in the case for them to take,' and have substantially held that the defendant Robert M. Reynolds had no further interest in *635 procuring the stock to be sold than that of a mere agent, and that he did no more than to represent to the plaintiff and her son the facts as they had been placed before him by the appellant, for the purpose of making sales to the plaintiff. They have found, from evidence which they had a right to believe, that the defendant William M. Reynolds made the false statements to Robert and caused Robert to repeat them to the plaintiff as an inducement to the plaintiff to invest her money, while they have rejected the other allegation of the complaint that the two Reynolds were engaged in a common conspiracy to defraud the plaintiff. The testimony of the defendant William M. in his own behalf, goes far, it is true, to exculpate himself in the transaction, but the jury have seen fit to take a different view of the case and to render a verdict based upon other competent testimony, which verdict we do not feel at liberty to disturb upon the facts as disclosed by the proofs. The several exceptions to the admission of evidence running through the case, eight in number, relating to conversations or communications between Robert and the plaintiff and Robert and the son of the plaintiff, do not seem to be well taken, for, as has already been stated, the appellant operated upon the plaintiff directly through the agency of his brother Robert and of the son of the plaintiff, as the jury has very properly found, and hence the plaintiff had a right to rely upon the statements made to her either by Robert or by her son Ogden, provided they were the same representations that were made by the appellant and which he designed should be in turn made to the plaintiff to induce her to buy the stock, of which there is ample evidence.
The exceptions to the proof of contemporaneous fraudlilent representations made by the defendant, were not well taken. Such evidence is admissible, not for the purpose of establishing the representations or the deceit in the action on trial, but for the purpose of showing the intent with which such representations were made, and to negative the possible hypothesis of innocence, although the representations may; be untrue. Miller v. Barber, 66 N. Y., 568.
The main questions, however, which are presented to us upon this appeal, relates to the alleged errors in the charge of the learned judge at the trial. In the first place, it is claimed that the court was in error in instructing the jury that, if any of those several representations stated in the complaint were fraudulently made, then the plaintiff had a right to recover. But the judge did not charge that proposition. He instructed the jury, however, that if the plaintiff failed to establish any one of the alleged representations, the defendant was entitled to a verdict in his favor. “If, however, they establish to your satisfaction, that any one *636 of these representations which were material were made by the defendant, knowing, or having reason to know them to be false, with the intent to deceive, and that the plaintiff relied upon that representation and parted with her money, the plaintiff in this case is entitled to a verdict at your hands for the damages that she has sustained.” This is not an instruction that if either of the nine false representations (as they were classified by the judge at the trial), was false and deceitfully made, a right of action was given to the plaintiff to recover the amount of money which she paid out for the stock, but it was that if any one of those propositions which was material, that is to say, which was sufficient, and did in fact fraudulently induce the plaintiff to part with her money, was fraudulently made, that the jury would be justified in rendering a verdict in her favor. Most of the representations relied upon, related to the value of the gold mines, and the exhibition of ore purporting to come therefrom, and a statement of the assays of such ore. Representations of this character, certainly, if false and fraudulently made, go directly to the substance of the action and are in no respect collateral. The representations that Mr. Coe was to purchase some of the stock at a certain price and desired to become president of the company, did not to the same extent establish the ultimate fraud relied upon, but rather constituted an evidentiary fact designed to operate upon the plaintiff’s mind, which would led her to believe that the ultimate fact designed to be impressed upon her, the great value of the mine, would be affected. If one, for instance, should represent that another person was solvent, * and that his promissory note for a given amount was good, and that he owned a farm of as many acres unincumbered, it could hardly be claimed, in an action for fraud against him for the deceit, that a recovery could be had upon showing that he did not own the farm, if it appeared that the thing ultimately designed to be represented, namely, the solvency, actually existed.
No exception, however, was taken to this portion of the charge, and while it is competent for us to consider an error of the charge not excepted to where the appeal is taken from the order denying a new trial, yet it would hardly behoove us to grant a new trial for the error even as it appears to the counsel for the defendant, inasmuch as we are well satisfied with the verdict of the jury, so far as it went.
The most serious objection, however, to the regularity of the trial is the alleged error of the judge in stating to the jury the measure of damages. In this case the action . being for the deceit for the sale of property, the measure of damages is the difference between the value of the *637 stock as represented and as determined by the value of the mines of the company, and the actual value of the stock as it really is, and as it is influenced by the actual condition of the mines. The learned judge, however, instructed the jury that the plaintiff was entitled to recover, if they found that the deceit had been established, the amount of money which she had paid out for the stock in question, namely, a balance of $18,000, to which they had the power to add interest.
The exception to this portion of the charge is as follows: “I also except to your instruction that if the plaintiff is entitled to recover, she is entitled to recover damages, the amount paid by her on the purchase of the stock, whether that purchase be intended to include or exclude interest; in either case, I except.” For this error we should feel constrained to grant a new trial, except for the fact that the learned trial judge had a right to proceed, as he actually did, upon the hypothesis that the stock held by the plaintiff was worthless. For if, throughout, the trial was conducted on that assumption, in the absence of any special request to charge a different rule, we do not think it is such an error as would require the resubmission of the case to another jury. This testimony of John Cummings is that the stock had no value in 1880 so far as he knew, in a public way. He says there were private sales made on personal assurances, but there was no general value in the market at all so far as he knew. The witness Franklin Allen says that the prices were variable and various. “What was the actual of the stock? I do not think it was worth anything.” At the close of the plaintiff’s case the counsel for the appellant said, evidently addressing the counsel for the plaintiff: ‘ ‘What do you claim? ” The counsel for the plaintiff responded: “We claim $20,500 principal, with interest on $18,500 from April 4, 1880; on $3,000 from April 22, 1880; on $1,000 from January 12, 1882, and on $500 from April 10, 1882, from which should be deducted the interest on $2,500 from August 4, 1880.” No dissent was made to this proposition of the counsel for the plaintiff and it was based upon the testimony already quoted. No request was made to the court to charge the jury a different rule, and, therefore, as it seems to us, the trial judge had a right to assume and to act upon that assumption, that the stock held by the plaintiff, and which she brought into court and offered to give to the defendant, was worthless and that no allowance should be made therefor. Doubtless, if his attention had been called to the question by way of a request to charge, the true rule, which is elementary, would have been stated to the jury, but we think that it is not permissible for a party to avail himself of an *638 exception taken in this manner, when the circumstances under which the charge was made, exhibit a case where on all sides, both of the court and respective counsel, a fact was necessarily assumed to exist of such serious import as to justify the charge, though technically with the attention of the court called distinctly to the subject matter, the charge would be so erroneous as to require the reversal of the judgment. We are referred, among cases that are familiar to the profession, to a decision by this court in January, 1883, in the case of Masterson v. Boyce, a manuscript opinion in which has been furnished us. In that case, the true rule of damages was stated by the court to the jury, but the trouble was that the jury did not follow the instructions of the court, and rendered a verdict for the plaintiff for the full sum which had been paid out for the stock. To the favor, and not for legal error, this court granted a new trial. It was shown in that case that the stock was simply diminished in value by reason of the fact that the amount of big vein coal was not so much as it had been reported to be, and that for that reason the value of the mine was materially reduced. And it was further shown that the stock was actually of considerable value.
The Court said: “ It is evident from the manner in which the case was submitted to the jury that the shares were not considered worthless by the learned judge presiding at the trial, for substantially the only view in which the subject of damages was presented was that which authorized the jury to return the difference between the value of the stock and what it would have been if the property had conformed to the representations made concerning it. That they could render a verdict for the entire purchase price, still leaving the plaintiff the owner of the stock, did not appear to receive the sanction of the court. Certainly, under the evidence, the jury was not justified in adopting that view. It was directly in conflict with the effect of the proof which had been taken.”
There is a wide difference, therefore, between the facts of the two cases, and the one cannot be said, in any legal sense, to be a guide for the decision in the other. .
It follows from these considerations that the judgment should be affirmed, with costs.
■ Daniels and Brady, JJ., concur.