Thomson, P. J.
Suit by appellees against appellant to recover the agreed price of goods, wares and merchandise, alleged to have been sold and delivered by the former to the latter. The answer was that the property purchased by the defendant consisted of varnishes, dry colors and certain kegs represented to contain white lead of good merchantable quality; that by the contract of purchase the plaintiff agreed to furnish labels to be pnt upon the kegs containing the supposed white lead, and which would indicate and guarantee the good quality of the article; that the defendant purchased relying upon the representation of quality; that the compound purporting to be white lead contained no white lead; that, after discovering that the *288 article was not white lead, the defendant ceased to sell or use it; that the plaintiff furnished no labels, and that the defendant had sold all of the so-called white lead, excepting approximately 1,500 pounds. The answer also contained an offer to return the unsold portion of the purchase, and to rescind the contract of sale in so far as it was in its power to do so. After hearing the evidence, the court directed a verdict for the plaintiffs.
The testimony was that the defendant had sold about 20,000 pounds of the supposed white lead, and had sold it all at a profit. There was no evidence that any of it remained on hand for lack of a demand, or that any which was sold by the defendant was ever returned on account of its quality, or for any reason, or at all. There was no evidence of the market value of the lead, or that it was worth any less than was agreed to be paid for it. Indeed, the fact that the great bulk of it was sold at an advance on its cost would indicate that it was worth at least the price charged. If there was a misrepresentation, there was a total want of evidence that any damage resulted from it; and it nowhere appears that the defendant was damaged in any way by the failure to furnish labels, if there was such failure.
Counsel representing the defendant does not, in his argument, undertake to say that his client suffered any loss on account of misrepresentation, or loss from any cause. His sole contention is that the goods were fraudulently sold for what they were not, and that, therefore, the contract was in contravention of public policy and cannot be enforced, and he characterizes the conduct of the plaintiffs as involving-gross moral turpitude. On examining- the facts attending the sale as the evidence discloses them, we discover nothing- very flagrant in the conduct of the plaintiffs. Nowhere do we find it testified that the *289 plaintiffs, or any agent of-the plaintiffs, ever stated to the defendant, or any agent of the defendant, that the goods sold contained white lead. Charles M. Ford, the president of the defendant, as a witness for the defendant, said that he was present when the sale was effected, and that there was no discussion as to white lead, hut only as to quantity and size of packages. The charge of misrepresentation is based entirely on a trade circular issued by the plaintiffs, which had come into the hands of the defendant, but whether before or after this purchase, does not appear. It was headed “White Leads.” Beneath was a list of different brands and their prices. Among these was one called “John W. Masury & Son’s Brooklyn Star,” which was the brand billed to the defendant. It contained no white lead, or none of any consequence. It contained zinc, as the defendant knew at the time of the purchase. One of the defendant’s witnesses, who was in the paint and wall paper business, testified that he was buying occasionally from the plaintiffs another of their brands called “Railroad White,” the constituents of which, as shown elsewhere, were the same with those of “John W. Masury’s Brooklyn Star.” This witness said that “White- Lead” was a trade term. It also appears that prior to the* purchase- in question the defendant had, at different times, ordered and received from thé plaintiffs invoices of their “Brooklyn Star” — the same brand of which they are now complaining. It may be that -the defendant thought it was purchasing white lead — not pure, for it knew that the subject of this purchase contained zinc; buti we are unable to find in the evidence any direct repre- ] sentation by the plaintiffs as to what its constituents i were, or any artifice employed by them to mislead the defendant. One of the .latter’s witnesses said that “White Lead” was simply a trade term; and, for *290 aught that appears, the words “White Leads” at the head of the circular had no significance except as a general commercial designation for the several enumerated brands, with little, if any, reference to the materials composing them.
In referring to the evidence concerning the facts connected with the sale, we have been moved by the extravagant terms employed by counsel in denunciation of the contract, but the disposition which must be made of the case does not depend upon such facts, whatever they may have been. Even on the supposition that the defendant was imposed upon by the fraud of the plaintiffs, nothing has been shown constituting a defense to the action. Plowever fraudulent the conduct of the plaintiffs may have been, the contract does not belong to the class of contracts which have been reprobated by the courts as opposed to public policy. A contract, to be against public poL icy, must be such that its performance would, in some way, have a tendency to work injury to the public, and such a contract is absolutely void. — See 23 Am. & Eng. Ency. of Law (2d ed.), 455; Fearnley v. De-Mainville, 5 Colo. App. 441; Goodyear v. Brown, 155 Pa. St. 514; Spence v. Harvey, 22 Cal. 337.
But a contract procured by fraud is injurious only to the person defraud’ed, and it is not void, but voidable only. — Benjamin on Sales, § 452.
Where a purchase of goods has been induced by fraudulent representations, the purchaser may, upon discovery of the fraud, rescind the sale and return the }Droperty to the vendor. But the rescission must be a complete rescission. The contract cannot be affirmed in part and rescinded in part. — Buchenau v. Horney, 12 Ill. 336.
However, the purchaser is not bound to rescind. He may retain the property and claim compensation in damages for the injury sustained by reason of the *291 fraud. He may prosecute his claim for such damages either by an original suit or by way of counterclaim to an action for the purchase price, and, as a general rule, the measure of his damages is the difference between the actual value of the goods and what they would have been worth if the representations had been true. — Lilley v. Randall, 3 Colo. 298; Herfort v. Cramer, 7 Colo. 483; Peck v. Brewer, 48 Ill. 54.
But the defendant is not claiming damages. It simply proposes to retain the money for which it sold the goods, and, on the hypothesis that the contract of sale was void as being against public policy, repudiate the indebtedness it incurred in their purchase. Upon its own showing, it can have no standing in a tribunal established for the administration of justice.
Let the judgment be affirmed.

Affirmed.