HAINES *et al.* V. TERRITORY.

(February 8, 1887.)

FALSE PRETENSES — INDICTMENT — PLEADING AND PROOF—VARIANCE—EVIDENCE—DECLARATIONS— CONDUCT OF TRIAL—OBJECTIONS NOT MADE BELOW.

1. Comp. Laws 1876, c. 35, § 138, applies to obtaining money or goods on credit by the false representations in writing of the defendant as to his "responsibility, wealth, or mercantile correspondence or connection," or by his procuring "others to report falsely of his honesty, wealth, or mercantile connection." Section 139, as amended March 5, 1884, applies to all cases of obtaining property generally on credit by false pretenses. *Held,* that section 138 limits the general act only so far as its words go, and leaves the punishment of offenses not within its limits for punishment under the general act.

2. The mode of obtaining goods by false pretenses is immaterial, the gist of the offense being the parting with the goods and the representations thereto inducing; and an indictment alleging that defendants, desiring to purchase certain goods, falsely and knowingly, with intent to defraud, made the representations complained of, thereby inducing the parting with the goods, need not expressly allege a sale on credit, since it necessarily negatives a sale for cash, and sufficiently designates the offense of "obtaining" goods by false pretenses.[1] Com. v. Strain, 10 Metc. (Mass.) 521, distinguished.

[1] See note at end of case.

3. In an indictment for obtaining goods by false pretenses, the allegation that defendants "obtained" the goods necessarily includes the idea of their delivery to them.

4. On the trial of an indictment for obtaining goods by false pretenses, which alleged no sale thereof, the evidence for the prosecution was that defendants bought the goods for part cash, giving a note for the balance. The owner of the goods testified that he would not have sold them had he not received the cash. *Held,* that there was no variance, since, the cash being paid, the controlling inducement was that defendants, having the means to pay, would pay the note, and, on the principle that the false pretenses need not be the only inducement, the crime was proved when such state of facts appeared.

5. On the trial of persons jointly indicted, the declaration of one of them is admissible against the others, prior to and conditional upon proof of the conspiracy being given.

6. The exclusion of any and all witnesses from the court room during the progress of a trial is wholly in the discretion of the court, and will not be reviewed except for gross abuse.

7. The mode of summoning a jury, not objected to and exceptions taken in the trial court, cannot be passed upon by the supreme court on appeal.

8. An instruction containing sound legal propositions as to the weight to be given to the testimony of defendants in a criminal trial, in determining which the jury were told that defendants' interest in the result of the trial was a matter proper for consideration, is not erroneous from the fact that it singled out the defendants from the other witnesses.

9. On the trial of an indictment against A., B., and C. for obtaining horses from E. by false representations as to the financial responsibility of D., who was put forward as a purchaser, the only uncontradicted evidence tending to inculpate C. (aside from B.'s declarations, testified to by D.) was that, before the sale, E. asked C. about D. and C. said he knew nothing about him, but that whatever A. and B. said would be all right, and that after the fraud had been committed, and E. had discovered it, he met B. and threatened to kill him, whereupon C. acted as peacemaker, and repaid to E. the commission which B. had received for selling the horses. *Held,* that there was not sufficient proof of C.'s connection with the crime to render the declaration of B. that C. was in the conspiracy competent.

CORN, J., dissenting.

Error to district court.

Alanson L. Haines, William W. Russell, John Faulds, and A. W. Branner were indicted for obtaining goods from Oscar Walker by false pretenses, and convicted. They assign error. Affirmed as to Russell and Haines; reversed as to Branner.

Indictment for obtaining property on false pretenses. The indictment, omitting

Haines v. Territory.

the introductory part, proceeds as follows: "Alanson L. Haines, William W. Russell, John Faulds, and A. W. Branner, whose first and Christian name is to the jurors aforesaid unknown, late of the county aforesaid, on the twenty-third day of April, in the year of our Lord one thousand eight hundred and eighty-six, at the county of Albany, in the territory of Wyoming, unlawfully, knowingly, falsely, designedly, and feloniously, devising and intending to cheat and defraud one Oscar Walker of certain of his personal goods, chattels, and personal property, that is to say, thirty-three horses, commonly called geldings, each of the value of one hundred dollars, and all of the total and aggregate value of three thousand three hundred dollars, did then and there unlawfully, falsely, fraudulently, knowingly, designedly, and feloniously falsely pretend and falsely represent to the said Oscar Walker, for the purpose of inducing him, the said Oscar Walker, to part with the said personal goods, chattels, and property of him, the said Oscar Walker, to wit, the said horses, commonly called geldings, of the value aforesaid, that the said John Faulds then and there desired to purchase of him, the said Oscar Walker, the said horses, commonly called geldings, and that the said John Faulds was then and there a ranchman and farmer doing business and engaged then and there in ranching and farming near Granger, in the territory of Wyoming aforesaid, and desired and wanted the said horses, commonly called geldings, to ditch with and to work upon the said farm and ranch of him, the said John Faulds, near said Granger aforesaid, and that the said John Faulds had then and there moneys and credits in a bank at Evanston, in the said territory of Wyoming, sufficient to pay for said horses, if purchased then and there by him, the said John Faulds, of and from the said Oscar Walker, as soon as said money could be obtained from said bank, and that the said John Faulds had previously theretofore been sent for by the said William W. Russell, through and by means of a certain letter written, addressed, mailed, and sent by the said William W. Russell to the said John Faulds, who had theretofore duly received the said letter, to come and purchase the said horses, and that, by and through a misunderstanding of the terms and contents of said letter, he, the said John Faulds, had theretofore been thereby led to believe that said horses were owned and held for sale by the said William W. Russell, and that the said John Faulds, by reason of his said misunderstanding of the terms and contents of the said letter, as aforesaid, had previously thereto come from the said Granger to the city of Laramie, in the county of Albany, in the territory of Wyoming, and then and there to purchase said horses from the said William W. Russell, but was then and there unprepared to pay for the said horses, as the said William W. Russell would have then and there trusted and given credit to the said John Faulds for the said horses, if the said John Faulds had purchased the same of the said William W. Russell, if the said William W. Russell had owned the said horses and had the same for sale then and there, he, the said William W. Russell, then and there knowing him, the said John Faulds, to be a safe person to trust and give credit to, and that the said John Faulds was then and there able to pay large sums of money, and was then and there able to pay, within a short time, the said Oscar Walker for the said horses, if purchased by him, the said John Faulds, then and there of the said Oscar Walker, and that the said John Faulds then and there desired to purchase of the said Oscar Walker the said horses for the use and benefit of him, the said John Faulds, and that the said John Faulds was then and there good and all right, and was then and there a safe person to trust and give credit to; and that the said John Faulds was then and there perfectly responsible, financially and pecuniarily; whereas, in truth and in fact, the said John Faulds did not then and there desire to purchase of him, the said Oscar Walker, the said horses, commonly called geldings, and whereas, in truth and in fact, the said John Faulds was not then and there a ranchman nor farmer, [etc., alleging the falsity of all the representations;] which said pretense, pretenses, representation, and representations the said Alanson L. Haines, William W. Russell, John Faulds, and A. W. Branner, whose first and Christian name is to the jurors aforesaid unknown, then and there well knew to be false and untrue; by color and means of which said false pretense and false pretenses and false representation and false representations they, the said Alanson L. Haines, William W. Russell, and A. W. Branner, whose first and Christian name is to the jurors aforesaid unknown, did then and there unlaw-

fully, knowingly, falsely, designedly, and feloniously obtain from the said Oscar Walker the said thirty-three horses, commonly called geldings, each of the value of one hundred dollars, and all of the total and aggregate value of three thousand three hundred dollars, and each and all of said horses, commonly called geldings, being then and there of the personal goods, chattels, and personal property of the said Oscar Walker, with intent then and there to cheat and defraud the said Oscar Walker of the same, to-wit, the said horses, commonly called geldings, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the territory of Wyoming."

Defendants were convicted, and brought error.

*Brown, Blake & Arnold,* for plaintiffs in error. *Corlett, Lacey & Riner* and *Mr. Corthell,* for the Territory.

MAGINNIS, · C. J. Plaintiffs in error moved below to quash the indictment, which motion was overruled, and exception taken. They then interposed a demurrer to the indictment, which was overruled. These are the first two and principal assignments of error.

The first question suggested by the motion and demurrer grows out of a misapprehension as to the scope and effect of section 138 of the crimes act in the Compiled Laws of 1876. Section 139 of that act, as amended March 5, 1884, is substantially the statute of 7 & 8 Geo. IV.; and it seems to be conceded that had section 138 not been enacted, the facts as developed in the court below would have constituted a breach of section 139 of the false pretenses act. It remains, therefore, to inquire what effect section 138 has upon section 139 in withdrawing this or any other case from the provisions of the latter section. Section 138 provides that, "if any person, by false representations in writing of his own responsibility, wealth, or mercantile correspondence or connection, shall obtain a credit, and thereby defraud any person," etc., "or if any person shall cause or procure others to report falsely of his honesty, wealth, or mercantile character," etc., he shall be punished. It is a fundamental principle that a statute which is in effect a limitation upon a general act limits the general act only so far as the words of the limiting statute go. In other words, where there is a general act creating and punishing an offense, which may be committed in a number of ways, and another statute prescribing a particular punishment for that offense when committed in a particular manner, such offense, unless committed in such particular manner, is subject to punishment under the general act; and it is equally true that a penal statute must be construed strictly. Counsel, we think, when they impute to section 138 the effect of providing, or attempting to provide, for all matters of false pretenses in which the element of credit enters, misapprehend the effect of such statute. If the wording of section 138 was not perfectly clear and intelligible in itself, the history of section 139 would cast sufficient light upon the scope which the legislature intended it to have. Section 139, as passed and incorporated in the Compiled Laws of 1876, contained the provision: "This section shall not apply to sales of property on credit." In 1884 the legislature struck out the clause quoted above, leaving section 139 to apply to any matter in which credit was an element, and which was not otherwise provided for. Section 138 only provides a punishment for the offense of obtaining goods upon credit by the representation in writing of the party himself as to his responsibility, or by his procuring others to make such representations for him; and it will be noticed that the representations are of a particular kind. In the case at bar, it is doubtful whether the representations made were such as is contemplated by section 138. See Lyde v. Barnard, 1 Mees. & W. 101. But, without deciding that question, it seems to us that upon other grounds the case at bar cannot be construed as within the contemplation of section 138.

Plaintiffs in error, for their own benefit, procured a person to perpetrate the fraud, not by any representations as to their responsibility, etc.; nor did they themselves make such representations, in writing or otherwise. Clearly, the offense not being within the letter of the act, they are not punishable under section 138. 2 Bish. Crim. Law, § 415. Faulds did not procure them to make representations, and thereby make them accessories to any crime of his, (it would not be difficult to imagine a state of facts in which he might have been wholly an innocent instrument;) but they originated the crime. They were the prime movers in it. They were to reap the benefits of it. In the view of this court, they are principals in the false pretenses. 1 Bish. Crim. Law, § 686; Queen

v. Moland, 2 Moody, Cr. Cas. 276. And the false pretenses which they made use of to carry out their fraud were not such as, under any indictment, would warrant a conviction and punishment under section 138. Not being punishable under section 138, we cannot concede for a moment that these acts, which, ever since the statute of Geo. IV., have been treated and punished as false pretenses, have ceased to be a crime by force of the mere fact that the legislature has provided a different punishment for the crime as committed in a particular manner.

Another objection is urged to the indictment in this case. It is contended on the part of the plaintiffs that the indictment is defective and insufficient in this: that it does not set out a sale, or attempted sale, of the horses to Faulds. Plaintiffs' objection is supported by a number of citations, the principal of which is Com. v. Strain, 10 Metc. (Mass.) 521. But we think there is a wide difference between Com. v. Strain and the case at bar. In that case, after alleging the pretenses, the indictment failed to make any further allegation connecting the pretenses with the obtaining of the property, the property having been obtained by means of a sale. We think the language of the court in Com. v. Strain was broader than was necessary for the decision of the case, the indictment being unquestionably bad. It is necessary that the indictment should set out all the facts which constitute the offense, and the additional ones which may be required to inform the accused of the charge which is made against them. The facts which constitute this crime are— *First*, the pretenses; *second*, their falsity; *third*, the fact of obtaining the property by reason of the pretenses; *fourth*, the knowledge on the part of the accused of their falsity; *fifth*, the intent to defraud. These five facts or set of facts must be alleged and proven in any case of false pretenses; but, in a case where the pretenses bear no apparent relation to the obtaining of the goods, as in Com. v. Strain, then whatever additional facts are necessary to intelligibly connect these two things as cause and effect must be alleged and proven. Whart. Crim. Law, par. 1215. In the indictment under consideration, the allegation is made that Faulds, desiring to purchase these horses, made these representations. Such was not the case in Com. v Strain. For the purpose of illustration, suppose that A. goes to B.,

and makes certain false representations, stating that he wants to buy a suit of clothes. Such representation, being the substance of the conversation which would precede any sale, states all that it is necessary to state about that part of the transaction. It would be ridiculous to require any other part or the whole of the conversation to be set out in the indictment. Thereupon B., after fixing a price upon the suit of clothes, delivers them to A. upon the strength of the representations, and gives him a credit for that amount. In other words, he sells the clothes. But it is immaterial what the price agreed upon is. If the property has any value, the crime is committed, and the amount does not affect it. The only allegation, then, that, according to plaintiffs' contention, should be added to the indictment is that "B. sold the clothes to A.,"—in other words, that A. obtained the clothes from B.; and we have already seen that the mode of obtaining them is immaterial. Com. v. Coe, 115 Mass. 481; Thomas v. People, 34 N. Y. 351. Nor can it be said that the allegation should have been made that the sale was upon credit, for the reason that there are but two forms of purchase and sale,—one for cash, the other on credit. Had the sale been for cash, no crime would have been committed. The allegation in the indictment that A. obtained of B. the clothes, the other allegations indicating a purchase, I think necessarily negatives the idea that the sale was for cash, and it must therefore have been upon credit. The false representations themselves, and the fact by whom they were made, (and these must appear in the indictment,) will plainly designate, as we think they do in the case at bar, the section of the statute under which the particular acts charged are punishable. We think the pretenses and the offer to purchase constitute clearly the inducement which led Walker, not to sell the property, because the sale is not the gist of the offense, but to part with the horses. The sale is only the ultimate fact,—the summing up of the circumstances surrounding the delivery of the horses by Walker, and the obtaining of them by Faulds. It can make no difference in the offense, or the method of charging it, whether the transfer of the property was surrounded by circumstances which would amount to a sale or a loan, or any of the other forms by which such transfers might be made. Com. v. Coe,

115 Mass. 481; Thomas v. People, 34 N. Y. 351. Such circumstances are merely evidential of the main fact that the accused actually obtained the property. This view is fully sustained in State v. Jordan, 34 La. Ann. 1219, which passes directly upon the point in controversy, and reviews Com. v. Strain. The supreme court of Massachusetts, in Com. v. Hulbert, 12 Metc. 446, has held an indictment, framed in almost exactly the same words as the one at bar, good.

A further objection is made to the indictment on the ground that it should state a delivery of the property to Faulds. We think the allegation that Faulds obtained the horses necessarily conveys and includes the idea that they were delivered to him; and this view has been adopted in Kennedy v. State, 34 Ohio St. 310, and affirmed in Tarbox v. State, 38 Ohio St. 581.

As to the objection made that the indictment is defective because it fails to apprise the accused of what crime they are charged with, we do not think the objection well taken. The distinction between larceny and false pretenses is well settled, and consists in the fact whether or not the owner intended or consented to part with the title to property. But the allegation of the indictment is that, by color and means of the pretenses, plaintiffs obtained the horses, presumably for the purpose which the pretenses and inducements held out would naturally accomplish. The object to be obtained by these means, it is apparent on the face of the indictment, was not merely the possession of the property, but its title also. They proposed to buy the horses, and thereby obtained them. By no construction could such an indictment be held to charge a larceny. This form of indictment has been held good in numerous cases. See 3 Chit. Crim. Law, 1006; Morris v. State, 25 Ohio St. 217; State v. Penley, 27 Conn. 587; Skiff v. People, 2 Parker, Crim. R. 139; Com. v. Hulbert, 12 Metc. (Mass.) 446; State v. Jordan, 34 La. Ann. 1219.

A large number of exceptions were taken at the time to the admission of testimony, but the first and most important one is as follows: The territory offered evidence tending to prove that Faulds bought the horses of Walker, paying him $1,000 in cash, and giving his note for $2,300 for the balance of the purchase money. The admission of this evidence was objected to, on the ground that no sale was alleged

in the indictment. We have seen that, in the opinion of the court, no allegation of a sale was necessary in the indictment, and therefore the objection on this ground was properly overruled. But a more serious objection to the introduction of this evidence, and its effect after its introduction, sugests itself to the court. The indictment charges virtually the obtaining of the property in question by means of the false pretenses alone. The evidence as admitted discloses the fact that Walker did not part with the horses on the strength of the pretenses alone, but that the payment of the $1,000 was one of the inducements. Indeed, Walker says that he would not have sold the horses had he not received the money. The question immediately arises as to whether such proof constitutes a fatal variance from the allegations of the indictment. The principle is well settled that the false pretenses need not be the only inducement, (Whart. Crim. Law, par. 1176, and cases there cited,) if they are the controlling motive.

In People v. Haynes, 14 Wend. 547, Chancellor WALWORTH says: "It is not necessary, to constitute the offense of obtaining goods by false pretenses, that the owner should have been induced to part with the property solely and entirely by pretenses which were false. If the jury are satisfied that the pretenses proved to have been false were a part of the moving causes inducing the owner to part with his property, and that the defendant would not have obtained the goods had not the false pretenses been superadded to statements which may have been true, and to other circumstances having a partial influence upon the mind of the owner, they will be justified in finding defendant guilty." See, also, State v. Mills, 17 Me. 211; Com. v. Drew, 19 Pick. 179; People v. Haynes, 11 Wend. 557; People v. Herrick, 13 Wend. 87; Smith v. State, 55 Miss. 513; In re Snyder, 17 Kan. 542.

It may be said, of course, that Walker would not have made the sale had he not been paid the $1,000; but it is equally true that, being paid the $1,000, he would not have sold had he not believed from these representations that Faulds was a man who had the means and would pay for them. We think this would constitute the controlling inducement. It being the controlling inducement, the crime is completely proved when such state of facts appears; and it becomes immaterial whether it was the

only inducement or not. The accused are sufficiently informed of what they are charged with, viz., "the obtaining of the horses by the particular false pretenses;" and the fact that other things operated to bring about the sale, different from and contradictory of the allegations in the indictment, is a matter of defense, which, under the ordinary rules of pleading, the prosecutor is not obliged to anticipate. If it had been possible for him to have made a case under the indictment, without eliciting the fact of the payment, then it would have been competent for the defense below to have offered such fact in evidence; and it would have been a proper matter for the determination of the jury as to whether, in view of all the facts, the accused were guilty of obtaining the property charged by means of the false pretenses alleged. If this case had been brought before the jury in this order, we cannot see how the court could treat it as a fatal variance; and we are of the opinion that the principle would not be altered by the fact that such evidence was elicited by the prosecution.

It has been urged upon the court that the evidence adduced below was insufficient to warrant a conviction. We think there was sufficient evidence upon which to base a verdict of guilty.

The third error complained of is that an open *venire* was issued to the sheriff of the county to serve in impaneling a jury in the trial of the case below. The record disclosing no objection and no exceptions taken to this proceeding below, this court cannot pass upon that question.

The fourth error assigned is that the court below erred in permitting the prosecuting witness, Walker, to remain in the court-room, having excluded the other witnesses. The matter of the exclusion of any and all witnesses from the court-room during the progress of the trial is wholly in the discretion of the court, and will not be reviewed, except for gross abuse. No such abuse has been shown here. 1 Bish. Crim. Proc. pars. 1188, 1189.

The twelfth error assigned is that the court below erred in permitting Faulds to testify as to Russell's declaration of who was in the conspiracy, before the fact of a conspiracy existing had been fully proven. "In an action for conspiracy, it is within the discretion of the trial court to allow evidence of the declaration of one of the alleged conspirators to be given prior to proof of the conspiracy, and con-

ditional upon the production of such proof thereafter." Place v. Minster, 65 N. Y. 89; Miller v. Barber, 66 N. Y. 558; 1 Greenl. Ev. par. 111. "If the proof subsequently given had failed to connect S. with the fraud, it would have been the duty of the court to have instructed the jury to disregard them." Miller v. Barber, supra. From a review of the testimony, we are satisfied that sufficient evidence was afterwards introduced to justify the court below in refusing to exclude the declarations of Russell, so far as they affect Haines and himself, from the jury. It is different in Branner's case. Upon a review of the evidence, we find this state of facts to exist: Branner came down from Oregon with Walker, and, at his suggestion, Walker stopped at Laramie to sell his horses. Walker, after talking to Haines and Russell, asked Branner about the man Faulds. Branner said that he knew nothing whatever about Faulds, but that whatever Haines and Russell said would be all right. The only further uncontradicted evidence which would tend to inculpate Branner is that when, after the discovery of the fraud, Walker met Russell in the hotel and threatened to kill him, he, Branner, acted as peacemaker, and while so acting repaid Walker the $100 commission which Russell had received for selling the horses. There is one other bit of evidence, to the effect that he had seen Faulds pay Russell $1,000 that morning in another deal. Walker so testifies, but is squarely contradicted by Branner. Some question is made as to the competency of such statement, and we think, under the circumstances, it is not entitled to much weight. We cannot see that sufficient evidence of Branner's connection with the conspiracy was given to justify the court in admitting Russell's declaration in regard to Branner's being one of the conspirators. This, we think, was manifest and reversible error, and, as to Branner, the judgment of the court below will be reversed, and a new trial will be granted him. The court is unanimous on the point that the conspiracy was not afterwards sufficiently proven, and the majority of the court find that he is entitled to a new trial.

The thirty-first error assigned is directed to the charge of the court below to the jury. The portion objected to is as follows: "The court instructs the jury that, although the law makes the defendants in this case competent witnesses, still the ju-

Haines v. Territory.

ry are the judges of the weight which ought to be attached to their testimony; and, in considering what weight should be given it, the jury should take into consideration all the facts and circumstances surrounding the case, as disclosed by the evidence, and give the defendants' testimony such weight as they believe it entitled to in view of all the facts and circumstances proved in the trial; that, although defendants have a right to be sworn and give testimony in their own behalf, still their credibility, and the weight to be attached to such testimony, are matters exclusively for the jury, and their interest in the result of the trial is a matter proper to be taken into consideration by the jury in determining what weight ought to be given to their testimony." It is conceded that the above instruction contains nothing but sound legal propositions, and the only complaint made is that defendants were singled out by the court from the body of the witnesses for comment. We do not think the court erred in giving the instruction as it did. People v. Cronin, 34 Cal. 204; Gray v. State, 107 Ind. 177, 8 N. E. Rep. 16; State v. Maguire, 69 Mo. 197; People v. Calvin, 60 Mich. 113, 26 N. W. Rep. 851; State v. Sanders, 76 Mo. 35.

Numerous other errors are assigned; but, upon a careful examination, it does not appear to the court that there were any material errors which would justify us in reversing the judgment of the court below.

The judgment of the court below, so far as the same affects Alanson L. Haines and William W. Russell, plaintiffs in error, is affirmed, and it is ordered that the judgment of the court below be enforced. The judgment of the court below, so far as it affects A. W. Branner, is reversed, and a new trial is hereby ordered, and the cause remanded as to him.

CORN, J., dissenting.

### NOTE.

To constitute the offense of obtaining money or property under false pretenses, there must be an intent to defraud; actual fraud must be committed; false pretenses must be used for the perpetration of the fraud; and the false pretenses must be the cause which induced the owner to part with his property. People v. Jordan, (Cal.) 4 Pac. Rep. 773. To secure conviction under an indictment for obtaining goods by false pretenses, it must be shown that the defendant not only made the false representations, but that he knew that they were false. Com. v. Delvin, (Mass.) 6 N. E. Rep. 64. See, also, note, Id. 68.

To sustain the charge of obtaining money under false pretenses, it is essential to show, not only that false pretenses were made, but also that the person who parted with the money relied upon the false pretenses made, and that the money was obtained by reason thereof. State v. Metsch, (Kan.) 15 Pac. Rep. 251.

An instruction that, if certain representations were made by the accused, and were known by him to be false, and by means thereof he obtained the property, he is guilty, is error, where there is no evidence that the person defrauded was induced to part with his property by such representations. State v. Stout, (Iowa,) 39 N. W. Rep. 275.

Pen. Code, § 532, provides that "every person who knowingly and designedly, by false or fraudulent representation or pretense, defrauds any person of money or property" is punishable. Held, that a statement by defendant that he had credit with the firm on which the draft was drawn for its amount, and that the firm would honor the draft, when he knew that he had no credit with the firm, and that the draft would not be honored or paid, was within the statute. People v. Wasservogle, (Cal.) 19 Pac. Rep. 270.

One who, at a cotton gin, claims cotton belonging to another, and has it ginned and baled with his, and delivered to him, is not guilty of obtaining goods under false pretenses, but of larceny, if of any offense. Hughen v. State, (Ark.) 11 S. W. Rep. 693.

Representations that defendant was a witch doctor and could kill and destroy witches; that the person to whom the representations were made was the victim of witches; and that, unless he employed defendant to exorcise them, they would kill him and his family, constitute no offense, being mere expressions of opinion, and not calculated to deceive a man of common understanding. State v. Burnett, (Ind. Sup.) 21 N. E. Rep. 972.

A banker who, for the purpose of securing a deposit, falsely pretends that his bank is solvent when he has reason to believe that it is not, is guilty of obtaining money under false pretenses, though he intended to repay the money. Com. v. Schwartz, (Ky.) 18 S. W. Rep. 358.

Where defendant, as agent for her daughter, obtained property from C., which belonged to such daughter, who was entitled to its immediate possession, by falsely representing that she was the agent of another person, and neither defendant nor her daughter had any intent to defraud C., but only desired to get possession of the daughter's property, defendant is not guilty of obtaining property by false pretenses under the Kansas statute. In re Cameron, (Kan.) 24 Pac. Rep. 90.

A circuit clerk who issues a series of false and fraudulent witness certificates, and places them in the hands of a third person to sell, cannot be convicted of receiving money under false pretenses, where the third person acts honestly in selling them, and where no part of the money received by such third person was ever turned over to the clerk, though the purchaser relied on

Haines v. Territory.

the clerk's representation that the certificates were all right. Bracey v. State, (Miss.) 8 South. Rep. 165.

Crimes Act N. J. § 171, (Rev. 257,) makes it a misdemeanor to obtain by false pretenses money, wares, merchandise, goods, or chattels, "or other valuable thing," with intent to cheat or defraud. Defendant was indicted for obtaining a person's signature to an order for certain articles for which the signer was to pay a named price. Held that, though this instrument purported to be negotiable, it could not under any circumstances affect the signer, if he proved that it was obtained by false pretenses, and hence it was not a "valuable thing," within the meaning of the statute, and defendant's conviction cannot be sustained. Robinson v. State, (N. J. Sup.) 20 Atl. Rep. 753.

An indictment for false pretenses alleged that defendant falsely represented to T. that he was the owner of land described in a deed to defendant, and procured a loan from T. by executing a mortgage on such land, whereas such deed was void by reason of defendant's having inserted his name as grantee contrary to the instructions of the grantor. It was shown that T. had no knowledge of the fraud infecting the deed to defendant. Held that, as T. was a *bona fide* mortgagee, the mortgage to him was valid, and hence, as he was not defrauded by defendant's false representations, a conviction cannot be sustained. State v. Matthews, (Kan.) 25 Pac. Rep. 36.

Where the owner of a mule, with the intention of defrauding a purchaser, makes false representations as to its soundness, etc., whereby the purchaser is induced to pay a higher price, it constitutes false pretense. State v. Burke, (N. C.) 12 S. E. Rep. 1000.

The accused borrowed $5,600, giving a note with two indorsers, and a chattel mortgage on cattle, part of which he did not own. He owed one of the indorsers $3,100, which was paid out of the money borrowed. The lender sold the cattle owned by the accused, and this left a balance unpaid on the loan of $1,831. The indorsers were solvent. Held that, though the accused had falsely represented that he owned all the cattle, the evidence did not justify a conviction for obtaining money under false pretenses. State v. Clark, (Kan.) 26 Pac. Rep. 481.

Upon the trial of an indictment for procuring an indorsement by false pretenses, the court directed the jury to convict if they believed the accused procured the indorsement by false representations, knowing that he could not fulfill the promise. Held, that the charge was erroneous, because it ignored two essentials of the crime charged: (1) The intent to defraud, and (2) knowledge of the falsity of the representation; and because it did not restrict the jury to the consideration of the particular false statement charged in the indictment. Sharp v. State, (N. J. Sup.) 21 Atl. Rep. 1026.

Where one procured signatures to a note by falsely pretending that an agreement had already been made whereby six persons were to pay his debts at some future time, such pretenses come within R. L. § 4154, which provides for the punishment of persons who designedly, by false pretense, and with intent to defraud, obtain from another person money or other property, or the signature to any instrument, the false making of which would be punishable as forgery. State v. Switser, (Vt.) 22 Atl. Rep. 724.

An indictment for obtaining a signature to a deed will lie if defendant procured such signature by falsely representing that land which he conveyed as consideration for the deed was unincumbered. State v. Butler, (Minn.) 50 N. W. Rep. 532.

One who applies for and obtains credit by falsely representing that he is perfectly solvent, and responsible for his debts, and is good for his obligations, is guilty, under Code, § 4587, declaring any person a cheat and swindler who "by false representation of his own respectability, wealth, or mercantile correspondence and connections," shall obtain credit, and thereby defraud any person of money, etc. Hathcock v. State, (Ga.) 13 S. E. Rep. 959.

# CASES

### ARGUED AND DETERMINED

IN THE

# SUPREME COURT

OF THE

# TERRITORY OF WYOMING.

## JANUARY TERM, 1888.