EMULSIFIED ASPHALT, INC. OF WYOMING, a Wyoming corporation, Appellant (Plaintiff),

v.

TRANSPORTATION COMMISSION OF WYOMING, an agency of the State of Wyoming, Appellee (Defendant).

No. 97–296.

Supreme Court of Wyoming.

Dec. 21, 1998.

Rex O. Arney of Brown, Drew, Massey & Sullivan, Casper, Wyoming, for Appellant.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; Ron Arnold, Senior Assistant Attorney General; Clinton D. Beaver, Senior Assistant Attorney General, for Appellee. Argument by Mr. Beaver.

Before LEHMAN, C.J., and MACY, GOLDEN, TAYLOR,* JJ., and PRICE, D.J.

GOLDEN, Justice.

This case presents the question whether an earlier specific statutory provision, Wyo. Stat. § 24–2–101(e), consenting to the Transportation Commission's exposure to contract actions, has been impliedly repealed by a later general statutory provision in the Wyoming Governmental Claims Act, Wyo. Stat. § 1–39–104(a), permitting any governmental entity to assert contract action immunity in any of the entity's properly executed contracts made pursuant to the entity's granted powers. Appellant Emulsified Asphalt, Inc. (Emulsified) brought suit against the Transportation Commission of Wyoming (Commission) on a contract the parties had entered into for highway construction. The Commission moved to dismiss the suit on grounds of sovereign immunity as provided for in the contract. The district court granted that motion and dismissed Emulsified's complaint.

We hold that the later enacted Wyoming Governmental Claims Act impliedly repealed the earlier enacted consent to suit provision in Wyo. Stat. § 24–2–101(e), thus allowing the Commission to insert an immunity provision in its contract. In this case, however, the contractual immunity provision is ambiguous and ineffective against Emulsified. We reverse the dismissal and remand for further proceedings.

## ISSUES

Emulsified presents these issues for our review:

Whether the district court erred in its construction and interpretation of the contract at issue?

Whether the sovereign immunity defense applies to a contract entered into between the Transportation Commission of Wyoming and a highway contractor?

The Commission believes the issues are:

1. Did the contract retain the state's sovereign immunity pursuant to Wyo. Stat. § 1–39–104(a) for all contract claims?

2. Should the Court abolish the doctrine of sovereign immunity for contract actions in Wyoming?

3. If the district court does have subject matter jurisdiction, is the court nevertheless precluded from enforcing an "agreement to agree"?

* Chief Justice at time of oral argument; retired November 2, 1998.

## FACTS

According to its complaint, Emulsified entered into a contract on December 7, 1995, with the Commission to reconstruct 10.4 miles of highway U.S. 87 for the State of Wyoming. This project was designated as the "Glenrock/Casper Project" (the contract). The parties also entered into two additional contracts, the McKinnon Road Project and the Newcastle Project. At the time that Emulsified bid on the contract it relied on the plans and specifications of the Commission and intended to substantially complete, and contends that it could have substantially completed, all three projects in 1996. At the time of bidding on the contract, Emulsified anticipated finishing the paving on the McKinnon Road Project before beginning the paving on the contract and also planned to finish the paving on the contract in time to complete the paving on the Newcastle Project before September 15, 1996. Emulsified contends that it was capable of performing and could have performed all the contracts in the allotted time if the plans and specifications furnished by the Commission on the contract had been correct.

When Emulsified began working on the Glenrock/Casper Project, it was discovered there were substantial material errors in the plans and specifications relating to the contract. The original planned quantity of unclassified excavation on the contract had been 518,700 cubic yards. The Commission re-estimated the quantity of unclassified excavation and determined that the new planned quantity was 815,000 cubic yards of unclassified excavation. As a result of the revised computations by the Commission, Emulsified and the Commission entered into a change order, Change Order # 4, which increased the quantity of unclassified excavation by 296,300 cubic yards. Emulsified claims that as a result of the increased excavation required on the Glenrock/Casper Project, it was required to bring additional equipment to the project that could and was intended to have been used on the McKinnon and Newcastle Projects in order to complete the excavation.

It became apparent at that time that Emulsified would have to change the sequence of work on the three projects so that it would complete the Glenrock/Casper Project first, complete the Newcastle Project second, then return to the McKinnon Project and complete all of the McKinnon Project except for the chip/seal portion of the project during the construction season of 1996. At this point in time, it was still feasible for Emulsified to complete all three projects in the 1996 construction season as contemplated, although in a different order. After Change Order # 4 was executed and during the summer of 1996 while excavation was going on, areas of unsuitable material were encountered which were not anticipated by the parties or shown on the plans and specifications. This unsuitable material had to be excavated and wasted and replaced with suitable matter which increased the unclassified excavation under the contract for a second time from the 815,-000 cubic yards shown on Change Order # 4 to 1,015,000 cubic yards, an increase of 200,-000 cubic yards of excavation. At that time, Emulsified anticipated it would be impossible for it to complete the Glenrock/Casper project and the other two projects as originally planned in the construction season of 1996.

Emulsified and the Commission entered into a second change order, Change Order # 8, involving unclassified excavation. Change Order # 8 compensated Emulsified for the increased amounts to be excavated, but left for later determination the compensation to be paid to Emulsified for the adverse impact on the other projects caused by the changes in the contract. Emulsified contends that it was not possible at that time to determine the amount of those damages.

Emulsified requested payment from the Commission for the additional impact costs caused by the changes in the contract. Emulsified sought compensation in the amount of $714,991.38 and for continuing impact damages for the McKinnon Project which could not be determined as of December 10, 1996, the date of Emulsified's claim. The principal continuing impact cost to Emulsified on the McKinnon Project is a penalty charged by the Commission in the amount of $950 per day for time overruns on the McKinnon Project. The Commission offered

to pay $271,961.84 and refused to pay for any liquidated damages caused by time overruns.

Emulsified rejected this offer and followed the administrative appeal procedure of paragraph seven of the contract, *viz.*, the district engineer reviewed the resident engineer's decision, the director of the Transportation Department reviewed the district engineer's decision, each affirming that the first offer was final. The Commission's decision letter informed Emulsified that, under the contract, if it contested this decision, its next option was to file an action in district court within a thirty-day period beginning the date it received this letter.

Because the parties were unable to agree on the appropriate amount to be paid for the change orders, Emulsified did follow the Commission's instructions and the provisions of paragraph seven of the contract and filed an action in district court. The Commission responded with a motion to dismiss on grounds of sovereign immunity as provided for in paragraph ten of the contract. Relying on the wording of the contract, the district court agreed that the complaint should be dismissed because of sovereign immunity. This appeal followed.

## DISCUSSION

Paragraph Seven of the contract states (emphasis added):

> VII. Any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Resident Engineer, who will reduce his decision to writing and mail a copy forthwith to the Contractor. Within thirty days from the date of receipt of such decision, the Contractor may appeal by mailing or otherwise furnishing to the District Engineer, a written appeal addressed to the office of the District Engineer. On appeal, the District Engineer will, within thirty days, promptly convene an informal meeting of the parties to the dispute for negotiation of any and all areas in conflict. Within thirty days of this meeting, a written decision will be forwarded to the Contractor. If the Contractor disagrees with this decision, he shall, within thirty days, appeal that decision to

the Director, who will convene an informal meeting of the Contractor, the Resident Engineer, and the District Engineer to negotiate a resolution to the problem. The Director will, within thirty days of this meeting, issue a written decision which will be forwarded by certified mail, return receipt requested, to the Contractor. **The Contractor may, within thirty days of the receipt of the decision of the Director, file an action in the District Courts of this State pursuant to the Wyoming Rules of Civil Procedure. If no such action is filed, or no such appeals are taken with the time provided herein, the decision of the Department will be final and conclusive.** Pending final resolution of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract in accordance with the Resident Engineer's decision. The negotiations required by this section are a condition precedent to filing an action in the District Courts of this State and shall be conducted in good faith toward a reasonable resolution of any matters in dispute between the Contractor and the Department.

Paragraph Ten states (emphasis in original):

## X. THE DEPARTMENT DOES NOT WAIVE SOVEREIGN IMMUNITY BY ENTERING INTO THIS CONTRACT.

### *The Parties' Arguments*

Although Emulsified has submitted a constitutional argument, it contends that this case can be resolved by principles of contract interpretation. In its response, the Commission relies upon the Wyoming Governmental Claims Act, WYO. STAT. § 1–39–104(a), for authority to assert sovereign immunity as an affirmative defense. Emulsified's reply brief identifies the Commission's enabling statute as containing language conflicting with that sovereign immunity assertion.

The statute which creates the Commission and sets out its powers is WYO. STAT. § 24–2–101. Subsection (e) of that statute states:

(e) The commission shall maintain offices at the state capital. The commission is empowered to sue in the name of the "Transportation Commission of Wyoming", and **may be sued by that name** in the courts of this state and in no other jurisdiction **upon any contract executed by it.** The attorney general is the legal advisor of the commission and shall prosecute and defend all actions and shall also appear in all proceedings in any federal department in which the commission is a party or is interested.

Wyo. Stat. § 24–2–101(e)(1997) (emphasis added).

The Wyoming Governmental Claims Act says this about contract actions:

(a) ... Any immunity in actions based on a contract entered into by a governmental entity is waived except to the extent provided by the contract if the contract was within the powers granted to the entity and was properly executed. The claims procedures of W.S. 1–39–113 apply to contractual claims against governmental entities.

Wyo. Stat. § 1–39–104(a) (1997).

Although we agree that contract construction could easily resolve this dispute, because the district court dismissed Emulsified's complaint on the basis of sovereign immunity, and because the Commission asserts it as a statutory right rather than as a matter of contract construction, we find that the issue whether sovereign immunity is available as an affirmative defense to the Commission must be addressed.

### SOVEREIGN IMMUNITY

In 1978, this Court distinguished between local governmental immunity and sovereign immunity and judicially abrogated local governmental immunity from suit in tort. *Oroz v. Bd. of County Comm'rs*, 575 P.2d 1155, 1158 n. 6 (Wyo.1978); *White v. State*, 784 P.2d 1313, 1319–20 (Wyo.1989). The legislative and executive branches of government then enacted and signed into law the Wyoming Governmental Claims Act which reestablished the tort immunity of a "governmental entity" subject to certain enumerated exceptions. *Hurst v. State*, 698 P.2d 1130,

1132 (Wyo.1985). Before that law went into effect in July of 1979, this Court considered whether or not sovereign immunity in tort existed by virtue of the statutory adoption of the common law as it existed in 1607 or by virtue of Art. 1, Sec. 8 of the Wyoming Constitution. *Worthington v. State*, 598 P.2d 796, 799–801 (Wyo.1979); *Oroz*, 575 P.2d at 1157. *Worthington* presented the opportunity to this Court to determine if sovereign immunity was adopted by our state constitution while permitting the legislature the option of allowing suit or if the state constitution assumed that there was no sovereign immunity but allowed the legislature to control some aspects of suit against the state. If sovereign immunity was not constitutionally based, the court would then have had to consider whether sovereign immunity was legislatively enacted in Wyo. Stat. § 8–1–101, which adopted the common law of England as the rule of decision in Wyoming. Sovereign immunity was part of the common law of England in 1607 and, therefore, would have become the law of Wyoming under the statute. *Worthington* decided that sovereign immunity was constitutionally based. *Worthington*, 598 P.2d at 801 (citing *Hjorth Royalty Co. v. Trustees of University*, 30 Wyo. 309, 222 P. 9 (1924)); Algirdas Mykolas Liepas, *The Doctrine of Sovereign Immunity in Wyoming: Current Status of the Doctrine and Arguments for Abrogation*, 20 Land & Water L.Rev. 221, 225 (1985). From that decision arose our rule that there can be no suit against the state without its express consent. *Oyler v. State*, 618 P.2d 1042, 1045 (Wyo.1980); *Biscar v. Univ. of Wyoming Bd. of Trustees*, 605 P.2d 374, 375 (Wyo.1980).

The Wyoming Governmental Claims Act reimposed governmental immunity in tort. In 1980, the legislature amended the Act to waive immunity on a contract by a governmental entity. 1980 Wyo. Sess. Laws Ch. 46. The amendment states in pertinent part:

Any immunity in actions based on a contract entered into by a governmental entity is waived **except to the extent provided by the contract if the contract was within the powers granted to the entity and was properly executed.**

Wyo. Stat. § 1–39–104(a) (1997) (emphasis added). Based on this amended language, the Commission asserts here that it has the power to place a sovereign immunity provision in any contract and may then raise it as an affirmative defense. This assertion, however, conflicts with the specific statutory language creating the Department of Transportation and establishing the powers of the Commission.

In 1919, when the legislature created the Commission, it empowered the Commission to sue and stated that the Commission "may be sued ... upon any contract executed by it." 1919 Wyo. Sess. Laws Ch. 132; Wyo. Stat. § 24–2–101(e) (1997). This Court recognized that this language was an express consent to sue the Commission. *Utah Constr. Co. v. State Highway Comm'n,* 45 Wyo. 403, 415, 19 P.2d 951 (1933). The United States Supreme Court also characterized this language as an express consent to suit. *State Highway Comm'n v. Utah Constr. Co.,* 278 U.S. 194, 199, 49 S.Ct. 104, 106, 73 L.Ed. 262 (1929). Our other decisions, while deciding issues of claims procedures and proper review, have acknowledged that the Commission may be sued upon one of its contracts. *See Rissler & McMurry Co. v. Wyoming Highway Dept.,* 582 P.2d 583 (Wyo.1978); *State Highway Comm'n v. Brasel & Sims Constr. Co.,* 688 P.2d 871 (Wyo. 1984). Despite this long recognition that the Commission can be sued on one of its contracts, the Commission now asserts that the Governmental Claims Act has impliedly repealed the express consent to suit language of Wyo. Stat. § 24–2–101(e) and allows the Commission to place a sovereign immunity provision in its contracts. The Commission relies upon *Longacre v. State,* 448 P.2d 832 (Wyo.1968), for this assertion.

### Statutory Repeal by Implication

In *Longacre,* this Court considered the validity of an Alcoholic Beverages Act, § 12–20, W.S.1957, (1967 Cum.Supp.) which stated:

No female shall be employed as a bartender in a room holding a retail liquor license.

*Longacre,* 448 P.2d at 832. Statutory validity was at issue because of the subsequent enactment of the Fair Employment Practices Act[1] which prohibited gender-based employment discrimination. *Id.* at 833. The obvious conflict between the two statutes raised the issue of legislative intent. Usually, this Court resolves these conflicts with the rules of statutory construction which, in *Longacre,* would have caused the specific Alcoholic Beverages statute to have prevailed over the more general fair employment practices statute. *Haines v. Territory,* 3 Wyo. 167, 172, 13 P. 8, 11 (Wyo.1887). Statutory construction also required the two statutes to be read together in a way to let both stand; however, the two were so repugnant to each other that we held it was the manifest legislative intent that the general statute have universal application and repeal by implication the earlier specific statute. *Longacre,* 448 P.2d at 834.

Although *Longacre* was one of our rare decisions finding repeal by implication, nothing we said in that decision diminishes the strength of our longstanding rule that repeals by implication are not favored and will not be indulged if there is any other reasonable construction. *Id.* at 834; *see also Town of Pine Bluffs v. State Bd. of Equalization,* 79 Wyo. 262, 283–85, 333 P.2d 700, 707–709 (Wyo.1958). The party asserting implied repeal bears the burden of demonstrating beyond question that the legislature intended that its later legislative action evinced an unequivocal purpose of effecting a repeal. *Nehring v. Russell,* 582 P.2d 67, 73 (Wyo. 1978). It must be shown that the later statute is so repugnant to the earlier one that the two cannot logically stand together, or that the whole subject of the earlier statute is covered by the later one having the same object, clearly intending to prescribe the only rules applicable to the subject. *Id.; see Town of Pine Bluffs,* 79 Wyo. at 283–84, 333 P.2d at 709.

In the instant case, conflict exists between the later general Governmental Claims Act allowing a governmental entity to insert an immunity provision in its contract and the earlier Commission statute which does not expressly grant the Commission the power to insert an immunity provision in its contract.

---

1. Wyo. Stat. §§ 27–257 to 27–264 (1967).

In the earlier specific statute, the legislature articulates an unqualified waiver of sovereign immunity upon any contract executed by the Commission, which statute was enacted decades ago and has not been revised or abandoned in the decades since the later enactment of the Governmental Claims Act. The original waiver plainly evinced an intent that those who contract with the Commission may have confidence that obligations under the terms of the contract will be honored, and not be subjected to the possibility of an arbitrary and capricious dishonor by the Commission, shielded by the doctrine of sovereign immunity.

■ The two statutory provisions interrelate to the extent that both waive immunity under a contract executed by a governmental entity but are irreconcilable on the issue of inserting an immunity provision in the contract. The statutory construction rule requiring the two be harmonized might resolve the issue if we were to decide the Commission's powers to contract included the power to insert an immunity provision in its contracts. This harmony cannot be achieved because the legislature did not expressly grant the Commission the authority to contract for sovereign immunity and only those powers expressly conferred by the legislature are granted to an administrative agency. *Brasel & Sims Const. Co. v. State Highway Comm'n*, 655 P.2d 265, 267 (Wyo.1982). We must follow *Longacre* and decide that, plainly, the later general statute was intended to address the entire subject of sovereign immunity and replace the earlier specific statute.

Contracts entered into by the Commission for the benefit of the state are deemed contracts with the State of Wyoming. WYO. STAT. § 1–35–103(b) (1997). Our holding that the Governmental Claims Act has repealed by implication the portion of the Commission's statute consenting to suit allows enforcement of the sovereign immunity provision of this contract in this case if it complies with general principles of contract law. Whether it does comply with those contract principles is the next issue addressed.

### Immunity Provision

■ The purpose of interpretation or construction of any contract is to ascertain the true intent of the parties. *State v. Pennzoil Co.*, 752 P.2d 975, 978 (Wyo.1988). Unless the terms of the contract are ambiguous, the language used in the contract expresses and controls the intent of the parties. *Id.* A contract is ambiguous if it is obscure in its meaning because of indefiniteness or expression or because it contains a double meaning. *Mountain View/Evergreen Improvement and Service Dist. v. Casper Concrete Co.*, 912 P.2d 529, 532 (Wyo.1996). Whether a contract contains an ambiguity is a question of law for the reviewing court which may be independently determined by this Court. *Id.* Ambiguous contracts are construed against the drafter. *Id.*

■ The Commission argues that paragraph ten allows it to unilaterally prevent Emulsified from resorting to the courts to enforce the contract. Emulsified argues that the Commission cannot be immune from suit if paragraph seven, drafted by the Commission, allows the specific right to resort to the courts for resolution of factual disputes. In its view, Emulsified believes that the Commission's interpretation of the contract allows it to adjudicate its own contract disputes. We held in *Brasel* that the Commission was prohibited from adjudicating its own contract disputes. *Brasel*, 688 P.2d at 875.

The inconsistency of these two provisions creates an ambiguous double meaning, and it will be construed against the drafter, the Commission. Paragraph seven entitles Emulsified to bring an independent legal action in the courts to resolve factual disputes. We do not decide that Emulsified's complaint constitutes a claim under paragraph seven, nor do we say that this decision limits Emulsified to just those causes of action to which paragraph seven applies and all others are precluded by paragraph ten's preservation of sovereign immunity. The plain meaning of paragraph ten is not apparent as to whether the parties' intent was to permit sovereign immunity as a defense to all disputes arising from the contract, tort immunity, or both. By itself, paragraph ten is ambiguous and is to be construed against the Commission.

 

## DUE PROCESS

Because we have decided that sovereign immunity as provided for in this contract does not deprive Emulsified of pursuing a remedy in court, it is not necessary to address this issue.

## AGREEMENT TO AGREE

Finally, the Commission contends that Change Order # 8 is missing the essential term of how to determine the amount of consideration and must, therefore, be considered nothing more than an agreement to agree. According to Emulsified, the change order provided for Emulsified to provide additional excavation services because of the Commission's errors and the Commission agreed to compensate Emulsified for this additional excavation and pay for the impact costs and time overruns caused by the additional excavation which could not be determined until the end of the construction season. The record does not provide us with the change order and we cannot construe it, but we will note that the agreement induced Emulsified to perform and it did perform the additional excavation. At the end of the construction season, Emulsified calculated that it was entitled to an additional $714,-991.38. The Commission calculated that the amount was only $271,961.84. We do not have a sufficient record to determine how these calculations were arrived at, but we do not believe that their existence indicates a mere agreement to agree, rather, their existence proves agreement.

## CONCLUSION

The Wyoming Governmental Claims Act governs sovereign immunity in this state and where a statutory provision in the Commission's enabling statute conflicts with it, the latter is repealed by implication. Under the Act, the Commission was authorized to insert an immunity provision in its contract with Emulsified; however, that provision in the context of the Emulsified contract is ambiguous and is to be construed against the Commission. Emulsified is entitled to sue the Commission in district court on its complaint. We reverse the order dismissing the complaint and remand for further proceedings consistent with this decision.